STATE OF MISSOURI, Respondent, v. SAMUEL JULIAN, Appellant.

**St. Louis Court of Appeals, March 22,' 1887.**

1. CRIMINAL LAW—CONCEALED WEAPONS.—One who carries a pistol, concealed upon his person, as a weapon, is *prima facie* guilty of carrying, concealed, a dangerous and deadly weapon, contrary to the statute.

2. —— EXCEPTIONS—WHO NOT WITHIN.—A justice of the peace, being without power to appoint a special constable to serve criminal process, the summoning, by such an appointee, of a person to assist in making an arrest will not authorize such a person to carry concealed weapons.

3. —— The exceptions to the statutory prohibition against the carrying of concealed weapons are exclusive, and a person carrying them must bring himself within the exceptions, although he is aiding in the arrest of a dangerous criminal.

APPEAL from the Webster County Circuit Court, W. J. WALLACE, Judge.

*Affirmed.*

JOHN O' DAY and E. D. KENNA, with JOSEPH WISBY, for the appellant: A private person is not only justified, but obliged to do his best to bring felons to justice, and while attempting to do so, he is in the discharge of a duty required of him by the law. The law is their warrant, and they may not improperly be considered as persons engaged in the public service, and for the advancement of justice, though without any special appointment, and being so considered, they are under the same protection as the ordinary ministers of justice. 1 Russell on Crimes [7 Am. Ed.] chap. 1, sec. 3, p. 534; Wharton on Homicide [2 Ed.] secs. 260, 261 ; *Brooks v. Commonwealth,* 61 Pa. St. 352 ; 4 Blackstone, 293. The act itself does not make a man guilty unless his intention was so.

Broom's Leg. Max. (2 Ed.) 190–226, 232, 239, 275, 263 ; Bishop on Crim. Law (3 Ed.) secs. 370, 381, 383 ; *The State v. Reilly*, 4 Mo. App. 397 ; *The State v. Newkirk*, 49 Mo. 85.

SAMUEL DICKEY, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted, under an indictment, for carrying, concealed upon his person, a deadly and dangerous weapon, in violation of Revised Statutes, section 1274.

The testimony tended to show that one Hailey, reputed to be a "bad, desperate, and dangerous man," had committed a felonious assault near the locality of the alleged offence here charged, and was a fugitive, supposed to be in hiding in the same vicinity ; that a justice of the peace issued a warrant for his arrest, but failed to find the constable by whom the writ should have been executed, whereupon he endorsed on the paper an authority to one Marlin, to act as special constable in making the arrest ; that Marlin summoned to his aid a number of citizens, including the defendant, and this *posse* kept up the search, without effect, for several days. The defendant and some others of the *posse* were directed by Marlin to attend a dancing party at the house of James Armigois, in the prosecution of their search for Hailey, or for any tidings of him. While the defendant was there engaged in dancing, a pistol dropped from his person, and was picked up by him and replaced in his hip pocket, where it was concealed.

That a pistol carried upon the person for the purposes, and from the motives entertained by the defendant, in this case, is a deadly or dangerous weapon, within the meaning of the statute, is not open to question. *The State v. Larkin*, 24 Mo. App. 410. The defence relied upon is, that the defendant, in undertaking to aid

in the arrest of a felon, was in performance of a public duty; that, considering the character of the person to be arrested, and other circumstances, the weapon was a necessary accessory to any hope of success in the undertaking, and the act of the defendant was, therefore, within recognized exceptions, which divested it of criminality.

The chief reliance of the defence, as to this point, is founded on the common law rule, which makes it the duty of every citizen to arrest, or aid in the arrest, of every felon. In so doing, he is considered, for the time, as engaged in the public service, and entitled to all the protection afforded to the regularly appointed ministers of justice. Wharton on Homicide, sects. 260, 261. The common law, however, never prohibited the carrying of dangerous or deadly weapons, concealed, or otherwise; and we have, therefore, no historical authority for assuming that, if such a prohibition had existed, the common law courts would have justified a violation of it, on the ground that the public duty of the citizen, or subject, might be the more easily, or more certainly, performed. Such is the sort of justification required for the defence in the present case, if we admit that the citizen's public duty remains as at common law. To sustain this defence, we must either find it lawful to violate a special law in the doing of a common public service, or else we must find in the special law itself some exception in favor of the same public service. The first alternative is, of course, inadmissible. As to the second, when we look for an exception to a general prohibition, we must seek that exception in the same authority which utters the prohibition. An exception to a statutory rule must be found in the force of statutory law, and can not be imported from the common law, in derogation of the statute. Whatever, then, might be the common law duties or privileges of private citizens, with regard to the arresting of felons, we must find in our statutory law, and nowhere else, the exceptional provision, which

will excuse the present defendant's infraction of the law against the carrying of a concealed, dangerous weapon.

The Revised Statutes provide:

"Sect. 1274. If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, * * * he shall, upon conviction, be punished," etc.

"Sec. 1275. The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or make arrests, nor to persons moving or traveling peaceably through this state, and it shall be a good defence to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defence of his person, home, or property."

The defendant was not a police officer, nor an officer of any sort, within the meaning of the statute. Was he a "person" whose duty it was to make an arrest? The exception implied in this clause can not refer to the common law duty already mentioned, because that would include every citizen in the state, and leave no one upon whom the prohibitory law could operate. Felons are at large in all times and seasons, and no day passes upon which any person might not volunteer as a felon hunter, and wear concealed weapons with impunity. The only escape left for the defendant, under this section of the statute, lies, if anywhere, in the supposed authority derived from his position as one of a *posse* summoned by the special constable appointed by the justice. But this supposed authority also fails. Justices of the peace have authority to appoint any private person, properly qualified, for the service of process in a civil case ; or upon information for a misdemeanor, but not in cases of warrants for felonies. The justice's appointment of Marlin to execute the warrant was

nugatory, and conferred no official authority upon him, or upon any one whom he called to his assistance. This disposes of every exception in the section quoted that can be supposed to apply to the case, and yet leaves the defendant without lawful justification of the act charged upon him.

Counsel for the defendant make an undeniably impressive appeal in his behalf, on the ground that his act was the offspring of meritorious motives, and that he was clearly innocent of any intention to commit a crime. The entire absence of criminal intent, as this is understood in the law, is generally sufficient to acquit, but, as popularly understood, it presents itself in various phases. A man may be honestly of the opinion that a particular act, which the law forbids, ought, for high moral reasons, not to be forbidden. He may, therefore, be equally honest in the belief that there is no real criminality in doing the act. But this will not excuse him in the law. A man may do a forbidden act, honestly believing that he is doing no wrong, from the fact that he is really ignorant of the prohibitory enactment. But this sort of innocent intent will be of quite as little service in his defence, since it is presumed always, that every man knows the law, at least so as to avoid its infraction. It is only when the act done is not intended to be the act which the law in fact forbids, that innocence of intent will furnish a sufficient defence. *The State v. Reilly*, 4 Mo. App. 392. If the act which is done, and which at the same time is the act intended to be done, be forbidden by law, then the doer is guilty of offence, whether he, in fact, knew of the prohibitory law, or not, and whether or not he believed himself to be doing that which was really meritorious. Such is the case presented by this record. The defendant did, and at the same time intended to do, an act which is specifically forbidden by statute law. We can not find that there was any error in the judgment upon his conviction.

The judgment is, therefore, affirmed, with the concurrence of Rombauer, J. ; Thompson J., dissents.

THOMPSON, J., delivered a dissenting opinion.

I.   It is a settled rule of the common law that a private person is justified in making an arrest without warrant, where (1) a felony has actually been committed by some one, and (2) the circumstances are such that a reasonable person, acting without passion or prejudice, would fairly suspect the person arrested of being the person who committed it. *Allen v. Wright*, 8 Carr. and P. 522 ; *The State v. Holmes*, 48 N. H. 377 ; *Reuck v. McGregor*, 32 N. J. Law, 70, 74 ; *Burns v. Erben*, 40 N. Y. 463, 466 ; *The State v. Bryant*, 65 N. C. 327 ; *Brooks v. Commonwealth*, 61 Pa. St. 352, 358 ; *Samuel v. Payne*, Doug. 345 ; *West v. Baxendale*, 9 Com. Bench, 141 ; *Holley v. Mix*, 3 Wend. 350 ; *Wakely v. Hart*, 6 Binn. 316 ; *Commonwealth v. Carey*, 12 Cush. 246, 221 ; 4 Bla. Com. 293 ; 1 Chit. Crim. Law, 17 ; 1 Russ. Cr., 593. The right to arrest, under such circumstances, is quite independent of the right to join in a hue and cry (*The State v. Holmes*, 48 N. H. 377), and it would seem, quite independent of the right to join in the fresh pursuit described in section 1751 of our Revised Statutes.   Nor is it at all necessary to the justification of such an arrest, that the prisoner should have admitted his guilt. *The State v. Holmes, supra*.   It was held, after thorough consideration, in Pennsylvania, that this right of a private person to arrest a suspected felon without warrant, is not abrogated by a constitutional provision (similar to our's) that, "the people shall be secure in their persons, houses, papers, and possessions, from unreasonable arrests, and that no warrant to search any place, or seize any person, or thing, shall issue, without describing them, as nearly as may be, nor without probable cause, supported by oath or affirmation." In that case, Tilghman, C. J., said : "It is nowhere said that there shall be no arrests without warrant.  To have said so would

have endangered the safety of society. The felon, who is seen to commit murder or robbery, must be arrested on the spot, or suffered to escape. So, although not seen, yet known to have committed a felony, and pursued without warrant, he may be arrested by any person. And, even where there is only probable cause of suspicion, a private person may, without warrant, at his peril, make an arrest. I say at his peril, for nothing short of proving the felony will justify the arrest. These are principles of the common law, essential to the welfare of society, and not intended to be altered by the constitution." *Wakely v. Hart*, 6 Binn. 318; recognized in *Russell v. Shuster*, 8 Watts and S. 309, and re-affirmed in *Brooks v. Commonwealth*, 61 Pa. St. 352, 359.

While it is true that a private person, thus making an arrest, does it at the peril of being compelled to prove, in an action for damages, for false imprisonment, that a felony had actually been committed, and that he had reasonable cause to believe that the person arrested was the person who committed it; and while it may be conceded that private persons are under no legal duty to take upon themselves the peril of making arrests under such circumstances, unless summoned by an officer of the peace; it is, nevertheless, true that the law regards the performance of such a duty, in a citizen, as commendable. In a case in Pennsylvania, Agnew, J., in giving the opinion of the court, answered the contrary argument in the following language: "It is also said that arrest by a private person is contrary to the genius of our institutions, and is the relic of a barbarous age. But the reverse is the case in a republic where the people, themselves, represent its sovereignty and its security. The felon is an enemy to that sovereignty and security, forfeits his liberty, and can not complain that the hand of his fellowman arrests his flight and returns him to justice. What title has he to immunity from the law, which he has violated, and

to be permitted to escape its penalty, because the officer of justice is not at hand to seize him ? He has broken the bond of society; he has dealt a blow at its security and welfare, and he has placed himself in open hostility to all its faithful members, whose duty it becomes to bring him to justice." *Brooks v. Commonwealth*, 61 Pa. St. 352, 359. In the opinion of the court, my colleagues seem to recognize the commendable nature of this duty.

The authorities are agreed that, in the exercise of this right, and in the discharge of this duty, the person attempting the arrest of the felon may justifiably use whatever force may be necessary to accomplish the arrest. "If," said Lord Hale, "the felon resists, or flies, so that he can not be taken without killing him, this is justifiable and no felony." 2 Hale P. C. 76. "No man," said Reade, C. J., "would attempt to arrest a felon if he were not allowed the advantage of overcoming resistance without subjecting himself to peril. He need not, therefore, engage with the felon on equal terms, but may overcome resistance with superior force, even to the extent of killing the felon, if necessary. * * * In case of resistance and conflict, the resistance must be overcome, *then* and *there;* because not only is the arrest of the felon involved, but the safety of him who is rightfully making the arrest." *The State v. Bryant*, 65 N. C. 327. In short, the law is, that a private person, proceeding, without warrant, to the arrest of a person on suspicion of felony, must, before making the arrest, give notice of his purpose to arrest for the felony ; and then, if a felony has actually been committed, and if the person whom he attempts to arrest be the felon, and he kill such felon through unavoidable necessity, in endeavoring to accomplish the arrest, it is justifiable homicide ; but if the felon kill him, in resisting the arrest, it is murder. *Brooks v. Commonwealth*, 61 Pa. St. 352, 359.

Where a justice's warrant is out, charging a particular person with the commission of a felony, this, under most circumstances, would be evidence upon which all

well-disposed citizens might lawfully act, in endeavoring to accomplish the arrest of the felon.

The evidence which the defendant tendered; and which was rejected, therefore, tended to show that the purpose for which Julian went to the place where the pistol was exhibited, was a lawful purpose. A citizen who undertakes the arrest of a desperate and dangerous felon, has "good reason" to carry a pistol, "in the necessary defence of his person," within the meaning of section 1275, Revised Statutes; since, in attempting to arrest such a person, he may have to defend himself against the deadly assaults of the latter. This is shown by common experience; and the person who would set out on such an errand, without being well armed, would be foolhardy. Assuming his tenders of evidence to be true, the defendant was, therefore, in the actual quest of a lawful object, which might, and probably would, create the necessity of defending his own person against death, or serious bodily harm, and this brought him within the exception of the statute, and made the carrying of the pistol lawful. If the decision of the majority is the law, then a number of citizens, who, on the commission of a felony, engage in fresh pursuit of the felon, must carry their weapons in their hands, or go unarmed, or else incur the penalty of the statute against carrying concealed weapons. The statute was never intended to reach or punish the carrying of weapons under circumstances where the pursuit of a lawful and commendable object would itself create a probable necessity of self-defence. Of course, such a case is to be carefully distinguished from the case where a person might make the pursuit of a felon a mere pretext for violating the law against carrying concealed weapons; but juries may be safely trusted, under proper instructions, to draw this distinction.

II. Unless there is some controlling authority to the contrary, which I have overlooked, I am not prepared to assent to so much of the opinion of the court as holds

that a justice of the peace has no power to deputize a private person to execute a warrant of arrest, in a criminal case. It is very plain that a justice would have no power, in the absence of a statute, to deputize a person to serve process in a civil case. The reason is, that justices of the peace, in civil cases, have no jurisdiction except that which is derived from statutes. But, in his character of peace officer, a justice of the peace is an officer of the common law ; and it appears that, at common law, he had power, as a peace officer, to make arrests himself, in like manner as sheriffs and constables had, and also to summon persons to his assistance, as they might do. It also appears, from high authority, that he had power to designate a person to execute his warrant of arrest, in a criminal case. This will appear from the following extracts from the authoritative work of Serjeant Hawkins. In his chapter on "Arrests by Private Persons," he has this section : " And if it be granted lawful to arrest a man on a hue and cry, where no felony has been committed, from the like grounds it seems to follow that it is lawful to arrest a man on a warrant of a justice of the peace, where no felony hath been committed." 2 Hawk. P. C. ch. 12, sect. 17. Further on, in his chapter on "Arrests by Public Officers," in treating of the persons to whom a justice's warrant of arrest may be directed, he says : "It may be directed to the sheriff, baliff, or constable, or to any person by name, who is no officer ; for that the justice may authorize any one to be his officer whom he pleases to make such ; yet it is most advisable to direct it to the constable of the precinct where it is to be executed, for that no other constable, and *a fortiori*, no private person, is compellable to serve it." 2 Hawk. P. C., ch. 13, sect. 27. Further on, the same writer says : " That the sheriff, having such warrant directed to him, may authorize others to execute it ; but that every other person to whom it is personally directed, must execute it ; yet it seems that any one may lawfully assist him."

2 Hawk. P. C., ch. 13, sect. 28. To both of these sections he cites Dalton's Justice, chapter 117, a work not accessible to the writer, but of very high authority upon the ancient common law, relating to the duties of magistrates.

In a case cited by this author in support of the above text, it is said by Lord Holt: "The justices have, all along, exercised a power of appointing constables, and we will intend that they have a sufficient authority for it." This was said in a case where the justices of the peace, by an order of sessions, had appointed one to serve as a constable in a particular village. *Case of the Village of Chorley*, 1 Salk. 176. I do not suppose that a person so designated to execute a justice's warrant of arrest would have, at common law, the power to summon persons to his aid, which the sheriff or a constable would have; but unless the above writer is in error, it would be entirely lawful for any citizen to assist him; and that is what the defendant did in this case. If he might lawfully assist in making such arrest, plainly, he might lawfully arm himself for that purpose, and would not be bound, upon any known principle, to carry his weapon in public, so as to advertise his quest to the felon or his friends.

I, therefore, think that, upon the facts stated in the defendant's tenders of evidence, the defendant has not been guilty of criminality under the statute; that the court accordingly erred in rejecting the evidence, and that the judgment should be reversed and the cause remanded.