STATE OF MISSOURI, Appellant, v. BOYD, Respondent.

St. Louis Court of Appeals, December 13, 1904.

1. **POLICE OFFICERS: Arrest Without Warrant.** At common law. a sheriff, or other police officer, has no authority to make an arrest, without warrant, for a misdemeanor not committed in his presence, only in exceptional cases.

2. ———: ———: **Statutory Authority.** But under section 6212, Revised Statutes of 1899, relating to duties of police boards in certain cities, a police officer has the right and the duty to make an arrest for a misdemeanor not committed in his presence, provided he has reasonable grounds to suspect a misdemeanor has been committed.

3. ———: ———: ———. Such police officers are officers of the State under section 6232, Revised Statutes of 1899.

4. ———: **Suppressing Bawdy Houses: Indictment of Officer: Multifarious Indictment.** An indictment charging a police officer with, first, omission to prevent the setting up and maintaining several bawdy houses in his police district; second, the failure to arrest the several keepers of the bawdy houses; third, the omission to arrest the inmates of such houses, was not bad for duplicity or multifariousness; the gravamen of the offense charged against the officer is that he willfully and unlawfully permitted bawdy houses to be set up and maintained in his district.

Appeal from St. Louis Court of Criminal Correction.— Hon. Hiram N. Moore, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Thomas J. Rowe* and *Simon S. Bass* for respondent.

(1) The indictment is multifarious, and bad for that reason. 1 Bishop's New Crim. Proc. (4 Ed.), sec. 432; State v. Jamison, 90 N. W. 622; People v. Flaherty, 57 N. E. 73; People v. Williams, 65 Pac. 323;

State v. Healy, 50 Mo. App. 243; State v. Harrison, 62 Ibid. 112; State v. Fox, 148 Mo. 517, 50 S. W. 98. (2) The indictment does not show knowledge by defendant of any of the matters concerning which it is alleged he was guilty of neglect. State v. Leigh, 3 Dev. & Bat. 127; State v. Darling, 36 Atl. 632.

BLAND, P. J.—Omitting caption, the indictment is as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court duly empanelled, sworn and charged, upon their oath present, that at the city of St. Louis aforesaid, and on the fifteenth day of February, in the year one thousand and nine hundred and three (and for a long time prior thereto), one Samuel J. Boyd was a public officer and a person holding trust and appointment, within and for the city of St. Louis and State of Missouri, to-wit: a member of the metropolitan police force and department of the city of St. Louis, of the grade and designation of captain of police, duly appointed, enrolled and employed by the board of police commissioners of said city, assigned and detailed to, and the principal officer of police, and in command of, that portion of territory of said city known and designated, for the purpose of police government, and duly established by the said board of police commissioners of said city, as the Fourth Police District of said city; and that the said Samuel J. Boyd was then and there (and for a long time had been) by virtue of the laws of the State of Missouri, a State officer.

"That he, the said Samuel J. Boyd, was then and there (and for a long time prior thereto had been) duly appointed and designated as such captain of police by the said board of police commissioners of said city, under and by virtue of the laws of the State of Missouri, and was then and there (and for a long time prior thereto had been) duly commissioned, sworn, as-

signed and acting as such captain of police, and in command, control, supervision and direction, for the purposes of police government and to enable the said board of police commissioners to perform the duties imposed upon them by law, of the said Fourth Police District of said city.

"That under and by virtue of the laws of the State of Missouri it was the official duty of the said board of police commissioners of said city, and of every member of the said police force and department of said city appointed, enrolled and employed as such by the said board of police commissioners, and the official duty of him, the said Samuel J. Boyd, as such member of said police force and department, and as such captain of police, and as such public officer, and as such State officer, at all times of the day and night, within the boundaries of said city, to preserve the public peace, to prevent crime and arrest offenders, to prevent and remove nuisances on all streets and highways and other places, and to see that all laws of the State of Missouri, relating to vagrants and disorderly persons were enforced.

"That he, the said Samuel J. Boyd, as such captain of police then and there (and for a long time prior thereto) had under his command and subject to his orders numerous sergeants and patrolmen of police, members of the said police force and department, and was vested with adequate power and authority as such captain of police in command of said Fourth Police District, and as such public and State officer, for the proper and efficient performance of the duty aforesaid.

"That at the said city of St. Louis, and on the said fifteenth day of February, in the year one thousand nine hundred and three (and for a long time prior thereto) and within the territory so known and designated as the said Fourth Police District of said city so commanded by him, the said Samuel J. Boyd, as captain of police, as aforesaid, there were and had been,

for a long time, continuously, openly and notoriously set up, kept and maintained certain common bawdy houses and brothels; and that then and there and for a long time prior thereto unlawful and disorderly conduct and practices were committed in each and all of said houses, and divers common prostitutes and bawds, vagrants and disorderly persons, resorted to and resided in said house for the purpose of common prostitution and bawdry, and solicited men for the purpose of sexual intercourse therefrom and in front thereof; which said common bawdy houses and brothels were so set up, kept and maintained in said Fourth Police District in certain buildings situated upon certain streets. and highways of said city, known and designated as North Twelfth street, North High street, Linden street and Gay street; which said buildings were known and designated respectively by the following street numbers, to-wit: the building designated as number 703 North Twelfth street; the building designated as number 705 North Twelfth street; the building designated as number 707 North Twelfth street; the building designated as number 709 Twelfth street; the building designated as number 711 North Twelfth street; the building designated as number 713 North Twelfth street; the building designated as number 721 North Twelfth street; the building designated as number 726 North Twelfth street; the building designated as number 821 North Twelfth street; the building designated as number 1205 Linden; the building designated as numbers 1208 and 1210 Linden street; the building designated as number 1215 Linden street; the building designated as number 1235 Linden street; the building designated as number 721 North High street; wherein the said common bawdy houses and brothels were then and there (and for a long time had been) so continuously, openly and notoriously set up, kept and maintained respectively by Fannie Adams, Rose Brown, Birdie Hill (alias Hall), Becky Weinstein, Lena Cohn (alias Smith), Ida

Smith, May Smith, Annie Brown, Becky Schwartz, Martha Sharp, Annie Smith, R. Johnson, Lillie Smith and May Connor; that it was the official duty as aforesaid of the said Samuel J. Boyd, as captain of police as aforesaid, in command of said Fourth Police District as aforesaid, and as such public officer and State officer as aforesaid, to arrest and cause to be arrested the said Fannie Adams, Rose Brown, Birdie Hill (alias Hall), Becky Weinstein, Lena Cohen (alias Smith), Ida Smith, May Smith, Annie Brown, Becky Schwartz, Martha Sharp, Annie Smith, R. Johnson, Lillie Smith and May Connor for violation of the law and for crime in so setting up, keeping and maintaining said common bawdy houses and brothels as aforesaid in said city of St. Louis, that they might be dealt with according to law, and to prevent said violation of law and crime, and to prevent and remove such common bawdy houses and brothels as common nuisances, and to arrest and cause to be arrested said common prostitutes, bawds and disorderly persons as vagrants.

"That nevertheless the said Samuel J. Boyd, being such captain of police as aforesaid, and commanding said Fourth Police District as aforesaid, and being such public officer and State officer as aforesaid, and then and there (and for a long time prior thereto) well knowing the premises aforesaid, did then and there, unlawfully and willfully, wholly neglect and omit to perform his said official duty as aforesaid, and then and there continuously did unlawfully and willfully wholly neglect and omit to use and exercise and to cause to be used and exercised all proper, reasonable and effective means within his power and authority as such captain of police, and as such public officer and State officer, for the prevention of the setting up, keeping and maintaining of the said common bawdy houses and brothels and each of them, and for the detention and arrest of the persons so setting up, keeping and maintaining the same.

"But on the contrary, he, the said Samuel J. Boyd, captain of police as aforesaid, and public officer and State officer as aforesaid, did then and there (and for a long time prior thereto) unlawfully and willfully suffer and permit the said common bawdy houses and brothels to be openly and notoriously set up, kept and maintained and in the buildings aforesaid, and the said unlawful and disorderly conduct and practices to be openly and notoriously committed therein as aforesaid, without any interference on the part of him, the said Samuel J. Boyd, captain of police as aforesaid, and public officer and State officer as aforesaid, and without any proper, reasonable and effective endeavor on his part toward the suppression thereof, or toward the detection and arrest of the persons setting up, keeping and maintaining the same, and without any proper, reasonable or effective endeavor on his part for the enforcement of the laws of this State respecting common bawdy houses and brothels and for the preventing of the violation of the laws of this State in respect to the setting up and keeping of common bawdy houses and brothels, and in respect to vagrants and disorderly persons, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State.                    W. SCOTT HANCOCK,
                "Assistant Circuit Attorney."

A demurrer to this indictment was sustained and judgment rendered on the demurrer, from which judgment the State appealed.

The indictment alleges the existence of fifteen separate and apart houses of ill fame, giving street and number of each house, in the police district over which the defendant, as captain of police, had jurisdiction, and alleges that it was his official duty to suppress these houses. The indictment further alleges that each of these fifteen houses was kept and presided over by a separate person, giving the name of each of the fifteen

proprietresses, and that it was the official duty of the defendant to arrest, or cause to be arrested, those persons for violating the law against the keeping of the character of houses described. It also alleges that these houses "were and had been, for a long time, continuously, openly and notoriously set up, kept and maintained . . . and that then and there and for a long time prior thereto unlawful and disorderly conduct and practices were committed in each and all of said houses, and diverts common prostitutes and bawds, vagrants and disorderly persons, resorted to and resided in said houses for the purposes of common prostitution and bawdry," and that it was the official duty of defendant, as captain of police, to arrest these persons, as vagrants.

It is nowhere alleged in the indictment that the offenses, for the commission of which it is charged it was the duty of defendant to make arrests, were committed in the presence or view of defendant, but that their commission was open and notorious and well known to the defendant. At common law, a sheriff, constable, or other police officer, has no authority to make arrests, without warrant, for a misdemeanor not committed in his presence or view, only in exceptional cases. The offenses charged in the indictment as having been committed, do not come within the exception. State v. Holcomb, 86 Mo. 371; State v. Underwood, 75 Mo. 230; 1 Bishop on Criminal Procedure, sec. 638. The inquiry, therefore, as to whether or not a police officer of the city of St. Louis may arrest for a misdemeanor not committed in his presence or view, becomes pertinent. The general duties required of police boards and police officers, in respect to the preservation of the peace, etc., are found in section 6212, R. S. 1899. This section provides: "They shall, at all times of the day and night, within the boundaries of said cities, as well on water as on land, preserve the public peace, prevent crime and arrest offenders," etc. It has been held

under this section, or rather the one of which it is a substantial copy (sec. 5, Acts of 1860, Laws of 1860-1, p. 448), that a police officer may, without warrant, arrest for a past demeanor, provided the officer making the arrest has reasonable grounds to suspect a misdemeanor has been committed (State v. Grant, 76 Mo. 236; State v. Hancock, 73 Mo. App. 19), and that members of the metropolitan police force are officers of the State and as such are authorized to make arrests for violations of the law of the State. State ex rel. v. Mason, 153 Mo. 23; State v. Evans, 161 Mo. 95. In the revision of 1899, they are declared to be both State and city officers (R. S. 1899, sec. 6232). Their duty, as defined by section 6212, supra, is "to preserve the public peace, prevent crime and arrest offenders." In the discharge of this duty, they may arrest, without warrant, for a past misdemeanor, or to prevent the commission of any crime, or for the purpose of preventing a threatened breach of the peace. It has been well said that "where it is the duty of an officer to make an arrest, he is bound to make it." We conclude that the defendant not only had power to make arrests for misdemeanors not committed in his presence or view, but that it was his duty to arrest when he knew of the commission of any crime within the city.

The indictment purports to charge three distinct commissions of official duty. First, the omission to take legal steps and to use lawful powers to prevent the setting up, keeping and maintaining of bawdy houses in the fourth police district. Second, the omission to arrest the fourteen keepers of bawdy houses in said district. Third, the omission to arrest the inmates and habitues of the fourteen houses in said district, as vagrants.

One of the grounds of demurrer is that the indictment is duplicitous and multifarious. Bishop, in his work on Criminal Procedure (vol. 1, sec. 432), says that duplicity "consists in alleging, for one single purpose

or object, two or more distinct grounds of complaint or
defense, when one of them would be as effectual in law
as both or all. Duplicity in an indictment is the joinder
of two or more distinct offenses in one count.'' This
definition of duplicity in an indictment is approvingly
cited.in State v. Fox, 148 Mo. l. c. 525. In State v.
Healy, 50 Mo. App. 243, it was held that two distinct
publications of the same criminal libel, constituted an
offense in itself and an indictment that charged both
publications in one count was bad for duplicity. In
State v. Bridges, 24 Mo. 353, A and B were charged
in the same count with betting on the result of an elec-
tion, and C with becoming stakeholder. The indictment
was held bad for duplicity.

The setting up or keeping of a bawdy house is a
misdemeanor punishable by a fine of not less than two
hundred nor exceeding one thousand dollars. R. S.
1899, sec. 2197. On conviction of vagrancy, the statute
(sec. 2228, R. S. 1899), declares the punishment shall
be ''by imprisonment in the county jail not less than
twenty days, or by a fine not less than twenty dollars,
or by both such fine and imprisonment.'' If the de-
fendant was put upon trial under this indictment on
the charge of failure to arrest the fourteen keepers of
the bawdy houses named and failure to arrest the in-
mates and habitues of said houses, six of the jurors
might believe him guilty of an omission to arrest Fan-
nie Adams, or any one or more of the fourteen keepers
of the houses named, while the six other might believe
him not guilty of that omission of duty, but believed
him guilty of an omission to arrest, as a vagrant, some
inmates or habitues of some one or more of the four-
teen houses, and thus the twelve agree on a verdict of
guilty, when in reality only six agreed that the defend-
ant was guilty of one and the same omission of duty
charged in the indictment, and the other six believed
him not guilty of that omission, but guilty of some
other omission of duty as charged in the indictment.

People v. Williams, 65 Pac. 323. If, therefore, the purpose of the indictment was to charge the omission of duty consisted in the failure to arrest the various offenders named and described in the indictment, it is bad for duplicity. But we do not think it was the intention of the pleader to charge the omission to arrest the offenders named, as the gravamen of the offense.

The indictment is, as near as may be, a copy of the indictment in the case of People v. Herlihy, 73 N. Y. Supp. 236, in which it was charged that there were one hundred and nine bawdy houses in the precinct over which defendant had jurisdiction as captain of police. The street and number of each house was stated. The neglect of duty charged was that the defendant as police officer, "did there continuously, unlawfully and willfully, wholly neglect and omit to enforce and prevent violations of the laws of this State in respect to the keeping and maintenance of such houses of ill fame and prostitution," etc. It was contended that the indictment was bad for duplicity, that it charged in one count one hundred and nine distinct offenses. In respect to this contention, the court said: "We are of the opinion that it does not. It is true that, if the defendant willfully and knowingly permitted one house of ill fame to be maintained within his precinct, he was guilty of the crime charged in this indictment; but the allegation that he permitted over 100 of such houses to be maintained does not render him the less guilty, nor does it charge him with an additional offense. The crime is the same. The gravamen of the offense alleged is neglect of duty in failing to suppress or close such houses, and in this respect the charge is analogous to one of conspiracy, which consists in an unlawful and corrupt agreement of the parties to it to do an unlawful act which agreement is entirely distinct from the unlawful act which the parties had in mind when they entered into the agreement or conspiracy. For this reason it has been held that parties who enter into a con-

spiracy are, by that act, guilty of but one offense, whether their agreement is to commit one or many crimes. State v. Kennedy, 63 Iowa 200, 18 N. W. 885. Here the offense of which the defendant is charged, as already indicated, consists in his willful omission and neglect of duty to suppress and prevent the maintenance of houses of ill fame within his precincts at the time specified. This is the charge, and, if he is guilty of it, then he is guilty of but one offense, and it matters not whether there be but one house or upwards of 100 as alleged.'' The duty of the defendant, as police officer of the city of New York, was, under section 315, of the Greater New York charter, to "carefully observe and inspect all . . . houses of ill fame or prostitution and houses where common prostitutes resort or reside . . . and to repress and restrain all unlawful and disorderly conduct or practices therein,'' etc. This section of the charter was a statutory warrant directed to the police officer, and comprehended all the houses of the character named in it, not one singly but all singly and collectively, and directed the officer to repress the evil, whenever and wherever it was found to exist, whether in one or in many houses.

By placing the indictment in the case of People v. Herlihy, 73 N. Y. Supp. 236, and one in hand, side by side, we see that the pleader patterned after the New York indictment, and intended to charge, and did charge, the identical offense alleged in that indictment which, to use the language of the court in the New York case, "consists in his willful omission and neglect of duty to suppress and prevent the maintenance of houses of ill fame within his precinct at the time specified. The gravamen of the offense charged against the defendant, is that he willfully and unlawfully permitted houses of ill fame to be set up, kept and maintained in his district at the times specified in the indictment. The allegations of omission of duty to arrest the offenders named and described, are but amplifica-

tions of the principal fact charged, and the indictment is valid, if there is any statute of this State, charter provision or ordinance of the city of St. Louis, which makes it the duty of police officers to prevent the setting up, keeping and maintaining of bawdy houses in said city; there is no State statute that makes it the special duty of the board of police, no provision of the kind is found in the city's charter, nor has the legislative department of the city passed any ordinance making it the special duty of the board of police to prevent the setting up, keeping and maintaining of bawdy houses in the city limits. But the setting up, or keeping of a bawdy house is a crime and it is the duty of the board of police to "prevent crime and arrest offenders," hence it is the duty of the metropolitan police force to prevent the setting up or keeping of houses of ill fame within the city limits. The only power, however, they may exercise in the performance of this duty, is to arrest the offenders, when they are known to them. Under this view of the law, we think it competent, under the allegations of the indictment, to show that houses of ill fame were permitted by defendant, as captain of police, to be notoriously kept in his district, with his knowledge, and that he made no reasonable effort to repress them by arresting the keepers and taking them before the courts of justice to answer for their crimes. As we construe the indictment it charges a single offense, to-wit, the omission of defendant as a police officer to take any steps to suppress any one or all of the thirteen bawdy houses alleged to have been set up and maintained in his district. To extend the scope of the indictment so as to cover every omission of duty incidentally charged, as failure to arrest any one or all of the thirteen keepers of the thirteen houses or any of their inmates would require the defendant on the same trial to defend against many separate and dis-

tinct offenses all charged in one count of the same indictment.

Judgment reversed and cause remanded. *Goode, J.,* concurs; *Reyburn, J.,* dissents.