STATE v. NEIL EDWARD NOLAN, Appellant.—No. 39555.—192 S. W. (2d) 1016.

Division Two, March 11, 1946.

*Lewis F. Randolph* for appellant.

982

*J. E. Taylor*, Attorney General, and *Will F. Berry, Jr.*, Assistant Attorney General, for respondent.

984

 BOHLING, C.—Neil E. Nolan was adjudged guilty of manslaughter for the killing of Alva N. Mead, a policeman, and his punishment fixed at eight years' imprisonment. He appeals. His contention the State failed to make a case calls for the facts.

Officers Mead, Blessing and McCullough of the St. Joseph, Missouri, Police Department went on duty at midnight March 18, 1944, and were cruising in a squad car. The B. & M. Tavern in said city was burglar-ized between 1:30 and 2:00 A. M. of said night. This was broadcast over the police radio to all squad cars about 2:00 A. M., and advised of the burglary and of the larceny of about $12.00 in change, pennies, etc., and a gun, or probably two. About 2:00 A. M., Officers Mead, Blessing and McCullough had interferred with what appeared to be the starting of a fight and ordered the men off the street. They cruised around a few minutes, returned, and observing a man still on the street corner, Officers Mead and Blessing left the automobile to find out why he had not gone. "Nick," the night man in a restaurant there, then told Mead and Blessing "about a dirty little boy coming and getting a ten dollar bill for a lot of small change." "Nick" gave the officers a description of the boy and the direction in which he went. They returned to the squad car and following the directions given by "Nick," located the boy on the southwest corner of 5th and Edmond streets. Mead, who was driving, pulled over on the southwest corner, heading in the wrong direction, and McCullough and Blessing, wearing their uniforms, got out. McCullough was in the lead. The boy, Nolan, in his seventeenth year, is appellant here. He had committed the felony at the B. & M. Tavern but this was not then actually known to the officers. He stated he lived in Florence Addition in response to a question. McCullough started to ask another question, at the same time reaching for appellant. McCullough said he took hold of appellant and

appellant jerked loose. Appellant, in a statement, put the occurrence this way: ". . . two cops drove up and started to search me. I had two guns so I made a break for it. One of the cops had ahold of me ▉ when I got away." Officer Blessing chased appellant, appellant having about a half block start. The chase proceeded diagonally across Fifth street into an alley and to Charles street; thence east. The officer lost appellant at Sixth and Charles streets among some parked automobiles but soon saw him crossing a parking lot at Seventh and Charles. He "hollered" for appellant to stop. When Blessing reached Seventh street, the squad car, driven by Mead, swung off Edmond street and headed south on Seventh. Mead stopped the car, jumped out and gave chase to appellant. According to appellant's statement, the officer told him to "halt" but he kept on going. Then the officer fired and hit the building. Appellant then fired back. The officer fired again. This shot struck appellant in the leg. Appellant shot a second time and continued running until his leg buckled under him. When Blessing reached him, Officer Mead was down on his knees and face, pitched forward. He was dead. He had bullet wounds in his right arm and left chest right over the region of the heart, the latter caused his immediate death.

▉ The contention that a submissible case was not made is without merit. That appellant used a deadly weapon; that he intended to shoot Officer Mead; and that he shot Officer Mead at a vital part of the body is not questioned. These circumstances of the instant case were sufficient to give rise to a presumption of murder in the second degree in the absence of other facts establishing murder in the first degree by proof of deliberation or establishing manslaughter by proof of want of malice or establishing an excusable or justifiable homicide. State v. Holme, 54 Mo. 153, 161; State v. Kyles, 247 Mo. 640, 647(I), 153 S. W. 1047, 1050(1); State v. Harris (Mo.), 177 S. W. 362, 364[2]; State v. Miller, 346 Mo. 846, 848[1], 143 S. W. 2d 241, 242[1, 2]; State v. Moore (Mo.), 235 S. W. 1056, 1058[2].

▉ Several issues presented by appellant stand or fall on the factual issue whether in the circumstances the jury could legally find that Officer Mead was attempting a lawful arrest. They arise in connection with several instructions. One denied appellant the benefit of his plea of self-defense if the jury found appellant killed in knowingly resisting a lawful arrest attempted in a lawful manner. Another advised the jury that Officer Mead had the right to arrest appellant if he had reasonable cause to believe and did believe that appellant had committed the felony of burglary and larceny of the B. & M. Tavern. Another was to the effect that if appellant knew Mead was a police officer and intended to place appellant under arrest for the felony of breaking into the B. & M. Tavern and that Mead was using only such force as was reasonably necessary to make said arrest and had reasonable cause to believe appellant guilty, then re-

sistance on the part of appellant was unlawful, and if appellant killed to avoid arrest, he was guilty.

The evidence is to be reviewed in the light most favorable to the State in determining its sufficiency for the submission of the fact issue of the lawfulness of the attempted arrest of appellant without a warrant, the officers having no warrant. In this connection neither the State nor Officer Mead was bound by any thoughts or reasons which might have dominated the acts of Officers Blessing or McCullough. State v. Whitley (Mo.), 183 S. W. 317, 319[3]. Distinctions exist with respect to the authority to make arrests, among other factors, between officers and private individuals (the authority of officers naturally embracing and exceeding that of private citizens); with respect to the grade of the offense, if any, committed, whether a felony or a misdemeanor; and whether committed within the view of the person making the arrest.

Officer Mead was a member of the police force of the City of St. Joseph. "A *policeman*, then, has the same power of making arrests for crimes or offenses against the State as has a *sheriff, constable*, etc., and in thus making arrests is covered by the same peculiar protection which the law throws around a sheriff or other like officer." State v. Evans, 161 Mo. 95, 108(2, 5); 61 S. W. 590, 593(2, 5), 84 Am. St. Rep. 669, after discussing the issue. See also State v. Gartland, 304 Mo. 87, 100, 263 S. W. 165, 169; Secs. 6495, 6581, R. S. 1939.

"Arrests by officers without warrant may be executed: 1. By a justice of the Peace . . . 2. The sheriff . . . 3. The coroner . . . 4. The constable . . . And in case of felony *actually* committed . . . he may upon probable suspicion arrest the felon; and for that purpose is authorized (as upon a justice's warrant) to break open ▆▆▆▆ doors and even to kill the felon if he cannot otherwise be taken; and, if he or his assistants be killed in attempting such arrests, it is murder in all concerned." 4 Blackstone Commentaries *292. In the note to Cooley's 1899 edition (Vol. 2, p. 1445) it is stated: "*If a felony has in fact been committed* by the person arrested, the arrest may be justified by any person without a warrant, whether there is time to obtain one or not. . . . But if no felony was committed by any one, and a private individual arrest without a warrant, such arrest is illegal, although an officer would be justified if he acted upon reliable information. [Citing cases.] . . . *Arrest without warrant* may be made *by an officer* where no felony has actually been committed, but suspected, and the individual is suspected of being the criminal; but a *private* person can justify the arrest only by showing the actual commission of a felony, and reasonable grounds to suspect the accused."[1]

---

[1]See also 2 Hale, Pl. Cr. *72, Chs. 10, 11; 2 Hawk., Pl. Cr. 115, Chs. 12, 13; 1 Chitty, Cr. L. *15, *17; Stephens, Cr. L. (27 Law Library), *242(2, 3);

State v. Whitley (Mo.), 183 S. W. 317, was an appeal from a conviction for murder in the first degree. One night Officers Shaiper and Joyce of St. Louis saw Whitley and one Wagner holding to David O'Connor. They suspected O'Connor was drunk and was being robbed and ran to the scene. Being told in response to inquiries that neither Whitley nor Wagner knew each other or O'Connor, the Officers placed the three under arrest and started toward a patrol box a few blocks away, Shaiper and Whitley in the lead. After traversing about 500 feet, Joyce observed a sudden scuffle between Shaiper and Whitley and heard a pistol shot, followed immediately by two more. Shaiper fell mortally wounded and Whitley fled. He was apprehended later. Earlier in the night Whitley had robbed one Ladinsky; but so far as appears of record neither officer had any knowledge or information of that felony. Whitley attacked the lawfulness of his arrest and claimed he had the right to resist. The court overruled these contentions on two grounds: (1) That Whitley had submitted to and did not resist an arrest; and (2) anyway the facts afforded sufficient grounds for Whitley's arrest if he had not submitted. Whitley also attacked an instruction to the effect, so far as material, that if he, in fact robbed Ladinsky and was, at the time of arrest, acting so as to create a reasonable suspicion that he had committed or was engaged in committing a felony, then it was the duty of Officer Shaiper "to arrest defendant, and the duty of defendant to submit thereto." Whitley contended that, regardless of whether he had in fact just robbed Ladinsky, the officer was not entitled to the protection stated in the instruction if he did not have knowledge of that felony. The court stated the instruction should be · (if not theretofore declared to be) the law and proceeded to so establish the law, considering Whitley's contention "so technical and narrow as to verge upon the ridiculous." The court, on the issue presented by the instruction pointed out with respect to an arrest without a warrant by a police officer ". . . and (b) that he may arrest upon suspicion any person who is in fact guilty ·of a recent felony, whether the officer be advised of such felony or not." (l. c. 320.) The court continued: ". . . the fact of guilt of the recent felony should be held to deprive the defendant of his right to resist"; and: ". . . we hold lawful the arrest of one guilty of an antecedent felony which is unknown to the arresting officer. . . . But [Whitley] being guilty, and knowing his guilt thereof (as the inference is from the jury's verdict), the duty was by law incumbent on

3 Russel on Crimes 83; 1 Bishop, Cr. Proc. (2d Ed.), 125, III; 1 Wharton, Cr. L. (12th Ed.), Secs. 136, 383; 1 East, Pl. Cr. 295, 298; 1 Arch., Cr. Pr. (8th Ed.) 81, Sec. I(c) et seq.; 4 Am. Jur. 18, Secs. 25, 36; 26 Am. Jur. 311, Sec. 227; 6 C. J. S. 586, Secs. 6, b, 8, b; 40 C. J. S. 865, Sec. 19; Id., 915, Sec. 50(a). Annotations, 66 L. R. A. 353; 33 L. R. A. (N. S.) 144; 84 Am. St. Rep. 682.

him to submit to this arrest, under penalty, if he refused, of taking away his defense when tried for any act done by him while resisting arrest.'' This harmonizes with constitutional and statutory enactments and later court decisions.

State v. Williams, 328 Mo. 627, 630, 631, 14 S. W. 2d 434, 435 [3-6], involved the lawfulness of an arrest without a warrant. After pointing out that defendants admitted they had transported and were convicted of transporting ''moonshine,'' ''corn whiskey'' a felony under Sec. 4500, R. S. 1929; the court said: ''Ordinarily we would say that was ample ground for the arrest; or, if it be put another way, there *was* probable cause. . . .

''But an officer has a right to *arrest* without a warrant on reasonable ground to suspect that the person arrested has committed a felony. . . .

''. . . He is not necessarily justified because he believes an offense has been committed, but he *is* always justified if an offense in fact has been committed, whether he had reason to believe it or not. If a crime has *not* been committed, then he can only be justified by the existence of reasonable ground to believe that it has been committed. As applicable to this case it would not matter a particle, when the deputy sheriff made the arrest, whether reasonable ground to believe a felony had been committed was presented to his mind or not; he is justified *because the reasonable ground existed*; the crime had in fact been committed. That is a complete justification. The arrest was therefore lawful.''

State v. Raines, 339 Mo. 884, 890, 98 S. W. 2d 580, 584[4], a prosecution for burglary, involved an arrest without a warrant and a search incident thereto, without a search warrant. The court quoted and applied State v. Williams, supra. Consult also State v. McNally, 87 Mo. 644, 651 (II, III); State v. Ford, 334 Mo. 1219, 1225, 130 S. W. 2d 635, 639; State v. Julian, 25 Mo. App. 133, 138(I).

 Our statutes explicitly authorize officers to use all necessary force to effect an arrest if a person flee or resist *after notice* of an intention to arrest him (Sec. 3960, R. S. 1939.). They may command assistance to retake him (Secs. 3961, 3882, Id.), and felons are to be forthwith pursued by officers and all others thereto required and may be arrested without warrant (Sec. 3882, Id.). Officers failing or refusing to pursue and arrest felons themselves commit a misdemeanor and are subject to punishment (Sec. 3884, Id.). Persons arrested and confined ''without warrant or other process'' are entitled to discharge from custody within twenty hours of the arrest unless charges be duly filed against them (Sec. 4346, Id. See Sec. 3883, Id.). Persons resisting the ''discharge of any official duty, in any case of felony'' commit a felony. (Sec. 4291, and see Sec. 4293, Id.). Sec. 4379, Id., provides that a homicide is justifiable when committed: ''. . . or third, when necessarily committed in attempting by lawful ways and

means to apprehend any person for any felony committed . . . ''
Consult also Sec. 17, Schedule, Mo. Const.

Among reasons advanced for protecting officers in the discharge of their lawful duties are: In a republic like ours, the citizens are sovereign. At common law and by statute sheriffs, constables, and other like officers are required to discharge their official duties—protect the sovereign—under penalties. The execution of legal processes and the discharge of legal obligations give life to the law; and resistance thereto is in opposition to the law, unlawful, and needs no inquiry as to malice. Sec. 4291, R. S. 1939; State v. Green, 66 Mo. 631, 646. The security of the people as well as the dignity of the law requires officers, in making arrests, to overcome flight and resistance and place the person under physical restraint, especially felons. This duty is accomplished by pressing forward. It is not discharged by defensive action. Officers are the aggressors. They ''would be of all men the most miserable'' if while effecting lawful arrests they be placed on the same level as ordinary individuals having a private quarrel and be denied that protection commensurate with the public duty exacted. Having imposed the duty to arrest in all lawful instances (see State v. Boyd, 108 Mo. App. 518, 525, 84 S. W. 191, 193), the sovereign does not needlessly expose its protectors as targets for felons to shoot down on the least provocation. The sovereign affords them with special protection. State v. Dierberger, 96 Mo. 666, 675, 10 S. W. 168. If one has the right to arrest another, that other has no right to resist. It is illogical and irreconcilable to say these rights coexist. Officers need not engage felons on equal terms. They are entitled to overcome flight or resistance with superior force, to the extent of killing the felon if necessary.

The mental state of the accused at the time of the arrest is a material subject of inquiry. A citizen who has committed no felony is conscious of no guilt and an arrest on a false pretense can readily arouse indignation and anger and righteous passion. How can that honest sense of outrage which springs into the mind of the innocent arise in the breast of a felon? Neither reason nor law reaches such a result. A felon knows of his violations of law, his crimes. An enemy of the sovereign and the security of society, he knows he has forfeited his right to liberty and that the discharge of duties imposed upon the protectors of the security of the sovereign demands his apprehension to answer at the bar of justice. Fear of and a desire to escape punishment motivates his resistance to a lawful arrest. Resistance thus becomes a crime and passion becomes wickedness. Consequently, the law that imposes the duty upon officers to arrest felons exacts, as a necessary corollary, that felons submit to lawful arrest.

''And hence it is, that these officers, that are thus intrusted, may without any other warrant but from themselves arrest felons . . . ;

990

and if they be assaulted and killed in the execution of their office, it is murder . . . '' 2 Hale Pl. Cr., *85, quoted in State v. Evans, supra. 2 Hawk. Pl. Cr., 120, Ch. 12, Sec. 15; 1 Chitty Cr. L. *15(a); Samuel v. Payne, 1 Doug. (1 King's Bench) 359; Burns v. Erben, 40 N. Y. 463, 466, 468, 469; Wakely v. Hart, 6 Binn. (Pa.) 316, 318-9; Holley v. Mix, 3 Wend. (3 N. Y.), 350, 353. The officers' duty is performed upon bringing the person before a magistrate, whose duty is to make inquiry and commit or discharge the person in accord with law. Citizens are not to be lightly deprived of their liberty; but the mischief and inconvenience sometimes occasioned the innocent was early considered insignificant when compared with the consequences to the police and the public of permitting felons and suspected felons to escape without investigation. See Ledwith v. Catchpole (1783), Caldecott's Rep. 291, per Lord Mansfield. Constitutional and statutory enactments evidence this policy for Missouri.

In the instant case we have not only the fact of the felony but also the fact of the arrested person being the felon. The attempted arrest was justified on two grounds.

Officer Mead had reasonable ground to suspect appellant guilty of the felony. Driving the squad car, he received the official police broadcast of the burglary and larceny of the B. & M. Tavern; knew that considerable small change, and a pistol, possibly two, had been taken. He and Officer Blessing were informed by ''Nick'' that a boy had just secured a $10 bill for a lot of small change. The officers located appellant nearby. Mead knew of Officers McCullough and Blessing approaching appellant. He must have seen the boy break the hold of Officer McCullough. He knew appellant was fleeing and Officer Blessing was pursuing. The crime was fresh; the pursuit was fresh. ''Nick'' the restaurant man, without knowledge of the burglary and larceny, so far as shown by this record, had his suspicions aroused to such an extent by appellant getting a $10 bill for a lot of small change at two in the morning of ''an awful bad night,'' raining, snowing and blowing, that he notified the officers. The jury could well find that Officer Mead, in joining Officer Blessing in the pursuit of appellant, reasonably suspected appellant of the commission of the burglary and larceny and was discharging the statutory duty enjoined upon him to effect the lawful arrest of a fleeing felon without waiting for a warrant. Furthermore, the presumption is that peace officers are in the lawful discharge of their duty in attempting to make arrests. State v. Cushenberry, 157 Mo. 168, 180(2), 56 S. W. 737, 742(2); Barboursville ex rel. Bates v. Taylor, 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093, 1097[4]. The presumption is difficult to rebut when the person arrested admits the commission of the felony.

Appellant was guilty of the burglary and larceny of the B. & M. Tavern. He knew ''the cops,'' peace officers, were calling to

him to submit to arrest. His flight was to avoid arrest. The law imposed upon him the duty to submit. State v. Whitley, supra. Consult State v. Noland (Mo.), 229 S. W. 198, 199[2]; State v. Lowry, 321 Mo. 870, 884 (IX), 12 S. W. 2d 469, 474[11]; State v. McNally, supra; State v. Ford, supra; among others.

Appellant's authorities disclose no error. State v. McGehee, 308 Mo. 560, 567(I), 274 S. W. 70, 71[1, 3], and State v. McBride, 327 Mo. 184, 188, 37 S. W. 2d 423, 424[3-6], are sufficiently distinguishable from the instant case in that they involved at most only a misdemeanor (see the McBride opinion). It is sufficient for the purposes here, without any necessity for inquiry into the propriety of all observations in all circumstances found in those cases, to simply point out that the authors of said opinions (White, J., and Cooley, C.) were, respectively, the authors of the later opinion in State v. Williams, supra, ▮▮▮▮ and State v. Raines, supra, cases involving felonies and in harmony with the rulings herein. State v. McGehee was overruled in part in State v. Ford, 344 Mo. 1219, 1227, 130 S. W. 2d 635, 640.

McKeon v. National Casualty Co., 216 Mo. App. 507, 523(VI), 270 S. W. 707, 711[5], involved defendant's liability under an accident insurance policy for the death of one McKeon who was killed when St. Louis policemen, who had no charge against him, sought to arrest him without a warrant for the sole purpose of identification, if possible, as a robber. What was there said, was said in ruling whether McKeon's death was accidental within the policy: "That is to say, if the act causing the injury was intentionally done by the insured, the result was not accidental; on the other hand, if the injury was intentionally caused by the aggressive act of another, the result was accidental." The determination that the police were the aggressors for the purpose of applying the policy provisions to the facts of that case is not controlling here. The issue and the facts differ.

In State v. Burnett, 354 Mo. 45, 188 S. W. 2d 51, 53[1], there was no evidence that defendant had committed any crime or was suspected of any felony.

State v. Jordan, 306 Mo. 3, 23(III), 268 S. W. 64, 70(4), held an instruction on the right of a police officer to arrest without a warrant upon reasonable grounds for the suspicion of a crime had no support in the evidence, was a mere abstraction and should not have been given; not necessarily reversible error. It is readily observable that the instant facts differ and the State's presentation here raises issues not considered in the Jordan case.

Appellant's contentions are overruled.

▮▮ Instruction No. 9 was abstract in nature, did not direct a verdict but informed the jury it was the duty of an officer to arrest persons whom he had reasonable cause to believe guilty of a felony "and to use such force as he may reasonably believe to be necessary to accomplish the arrest," and then, in a separate paragraph, that it

was Officer Mead's duty to arrest appellant if Mead believed him guilty of the felony committed at the B. & M. Tavern. Appellant says the quoted words make the officer the sole arbiter of the force necessary to effect an arrest. Officer Mead was authorized by Sec. 3960, R. S. 1939, to "use all necessary means to effect the arrest"; and we think appellant, under his evidence, was not prejudiced. It is clear from appellant's statement after his arrest and his testimony at the trial 'that he fled to escape arrest, he says, on account of the guns he had on him; and although shot by Mead in the leg, appellant testified: "I never did stop before or after he shot me until my leg buckled up on me." So, appellant, in effect, admits it was necessary for Mead to shoot if he was to stop appellant's flight and arrest appellant. But the instruction did not authorize Mead to use such force as seemed necessary to him as in State v. Montgomery, 230 Mo. 660, 675, 132 S. W. 232, 236. It limited the force to such "as he may reasonably believe to be necessary." "Reasonably believe" called for a lawful standard of belief; that is, the belief of an ordinarily careful and prudent man. If Mead believed greater than reasonable force was necessary, then his belief was not reasonable and such force was not authorized because of the limitation of "reasonably" upon the word "believe." If his belief as to the necessary force was reasonable, then it was within the use of "all necessary means to effect the arrest." The instruction appears to be more favorably worded for appellant than the statute. An officer may not arbitrarily abuse this power confided in him by the use of unnecessary, excessive or a wanton applicaton of force, but he should be entitled in discharging a bounden public duty exacted by the law at least to that leeway arising from the presumption accorded officers generally of acting in good faith and not have his actions unreasonably weighed against him. Consult instructions in State v. Lane, 158 Mo. 572, 587, 59 S. W. 965, 969; State v. Rose, 142 Mo. 418, 427, 44 S. W. 329, 331. See also State v. Ford, 344 Mo. 1219, 1225, 130 S. W. 2d 635, 637; Barboursville ex rel. Bates v. Taylor, 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093, 1097[4]. Lastly, doubt, if any, on this issue was removed when the verdict directing instruction conditioned appellant's guilt upon Mead using "only such force as was reasonably necessary to accomplish said arrest." This was well within the statutory authorization. Appellant's position is not well taken.

█ What we have said covers all issues preserved for our review; issues presented in appellant's brief and in his motion for new trial. We have examined the other issues mentioned either in the brief or in the motion. They are without merit. For instance: Appellant, convicted of manslaughter, may not successfully urge error, if any, in the instruction submitting the greater offense of second degree murder to the jury. State v. Flinn (Mo.), 96 S. W. 2d.506, 511[12]. Under appellant's testimony, he had no legal self-defense

issue based on the asserted fact that Officer Mead was attempting an unlawful arrest. State v. Noland, supra; State v. Lowry, supra. It was not necessary to define the words quoted infra in the clause informing the jury an officer had the duty of arresting, without a warrant, persons whom he had ''reasonable cause to believe'' had committed a felony. The words are not technical, are in daily use and in the circumstances of the instant case were readily understandable. Appellant must have so considered at the trial as we find no request for their definition. Compare State v. Raines, 333 Mo. 538, 542[5], 62 S. W. 2d 727, 728[7, 8]; State v. Tedder, 294 Mo. 390, 404(a, b, c, d), 242 S. W. 889, 892(a, b, c, d). Appellant fared well with the jury. See State v. Evans, 161 Mo. 95, 112(6), 61 S. W. 590, 594(6). He has no legal cause for complaint.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy, J.*, and *Ellison, P. J.*, concur; *Tipton, J.*, not sitting.