## BENJAMIN F. KINNEY v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division Two, July 14, 1914.

1. **NEGLIGENCE: Contributory: Collision: Danger Signals: Question for Jury.** On a dark, drizzly night the interurban trolley car on which plaintiff was motorman collided with a work car which stood between stations with no tail light burning. Another car was at the time from one to three car lengths beyond the work car and coming up, with headlight burning, on a parallel track eight or ten feet from that on which plaintiff's car was running. The window directly in front of plaintiff in the vestibule was closed, but that to his right was open. *Held,* that the question whether plaintiff was negligent in failing to see the work car was for the jury.

2. ——: ——: ——: ——: **Custom: Evidence: Pleading.** Where the petition charges common-law negligence in an action by a motorman for injuries received in a rear-end collision, and alleges that the car with which his collided was without rear lights, evidence of a rule and custom of the company to keep a red signal light on the rear of cars at night is admissible, even though such rule and custom be not pleaded.

3. **VOIR DIRE: Attorney for Casualty Company: Not Record Party.** Where an attorney for a casualty company was in court ostensibly as counsel for the defendant, and making a defense which was really in behalf of his company, not a record party to the suit, it was not improper for plaintiff's counsel to ask jurors on their *voir dire* if they were connected in a business way with the casualty company.

4. **NEGLIGENCE: Loss of Leg: Improper Remarks of Counsel: Verdict: Remittitur.** The plaintiff, a motorman employed by defendant, lost a leg as a result of a rear-end collision with a car which he alleges burned no signal lights behind. His petition asked for $50,000 damages, and an instruction authorized the jury, if they should find for him, to assess the damages at "not to exceed" that sum. Defendant's employees fully supported the plaintiff as to the facts of defendant's negligence. Plaintiff's counsel in his argument asked the jury to imagine as plaintiff a female passenger on the car, and when an objection was sustained to that he turned to picture plaintiff's battle with defendant's legal department and claim agents. An objection to that was overruled, and then counsel, until stopped by the court, argued about the objections, once stigmatizing them as "tricks of the trade." The jury returned a verdict for $20,000, and judgment was entered for $15,000 after compulsory remittitur of $5000. *Held*, that, although the conduct of plaintiff's counsel was most reprehensible, yet, since it seems plaintiff would have had a verdict in any event, it is not reversible error; but in view of the fact that the court has hitherto refused to affirm judgments for more than $10,000 for the loss of a leg, counsel's misconduct affords ground for requiring a further remittitur for $5000.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

Affirmed (*conditionally*).

*John H. Lucas, Boyle & Howell, Jos. S. Brooks, Chas. N. Sadler* and *M. T. Prewitt* for appellant.

Kinney v. Met. St. Ry. Co.

(1) The court erred in overruling defendant's instruction in the nature of a demurrer to the evidence at the close of the evidence. Williams v. Railroad, 149 Mo. App. 489; Koenig v. Railroad, 173 Mo. 698; Klockenbrink v. Railroad, 172 Mo. 678; Moore v. Railroad, 194 Mo. 1; Eppstein v. Railroad, 197 Mo. 720; Murrell v. Railroad, 105 Mo. App. 88; Abbott v. Railroad, 121 Mo. App. 582; Brody v. Railroad, 206 Mo. 509; Moore v. Railroad, 146 Mo. 582; 1 Bailey on Personal Injuries, sec. 1121. (2) The court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff. Fechley v. Railroad, 119 Mo. App. 372; Mooney v. Kennett, 19 Mo. 555; Bailey v. Kansas City, 189 Mo. 514; Tarkio v. Lloyd, 179 Mo. 605; St. Louis v. Roche, 128 Mo. 541; Crone v. Mallinkrodt, 9 Mo. App. 316; Keane v. Klausman, 21 Mo. App. 489. (3) The verdict of the jury is excessive. Farrar v. Railroad, 155 S. W. 444; Brody v. Railroad, 206 Mo. 540; Newcomb v. Railroad, 182 Mo. 727; Scrivner v. Railroad, 260 Mo. 421. (4) The court erred in permitting attorney for plaintiff to improperly examine jurors on *voir dire,* and permitted said attorney to make improper remarks before the jury in the closing argument. (5) The court erred in overruling appellant's motion for a new trial. The verdict of the jury is excessive, and evidences passion and prejudice on the part of the triers of the fact. Lehnick v. Railroad, 118 Mo. App. 616; Spohn v. Railroad, 87 Mo. 84; Price v. Evans, 49 Mo. 336; Fugler v. Bothe, 117 Mo. 502; Waddell v. Railroad, 111 S. W. 542; Briscoe v. Railroad, 120 S. W. 1162; Wellman v. Railroad, 219 Mo. 126. (6) The court erred in giving instruction 2-p, on behalf of the plaintiff, in this: (a) The court refers the jury to the petition sued on for the injuries suffered by plaintiff. (b) It tells the jury that they may assess his damages at such an amount as they find will compensate him for his injuries so received, such injuries not being speci-

fied in the instruction.   (c) It tells the jury they may
take into consideration physical and mental an-
guish "sued for in this case," and then tells the
jury that they may find for the plaintiff in such sum
as will fairly compensate him for his injuries, it being
alleged in the petition that plaintiff had been com-
pelled to expend and became liable for seven hundred
and fifty dollars for doctor's bills, medicines, etc.
Hawes v. Stockyards Co., 103 Mo. 66; McGowan v. Store
Co., 109 Mo. 578; Pandjiris v. Hartman, 196 Mo. 547;
State v. Scott, 109 Mo. 231; Shaw v. Dairy Co., 56 Mo.
App. 521; Grant v. Railroad, 25 Mo. App. 227; Schaub
v. Railroad, 106 Mo. 74.

*Brewster, Kelly, Brewster & Buchholz* for re-
spondent.

(1)   The court did not err in overruling defend-
ant's demurrer to the evidence.   Theobold v. Transit
Co., 191 Mo. 432; Trigg v. Water, Light & Transit Co.,
215 Mo. 543; Petty v. Railroad, 179 Mo. 674; Carter
v. McDermott, 29 Mo. App. Cas. (D. C.) 145; 10 Am. &
Eng. Ann. Cas. 601.   (2)   The evidence offered was
competent and proper, and in support of the allega-
tions of the petition.   Campbell v. Railroad, 175 Mo.
175; Lancaster v. Railroad, 143 Mo. App. 172; Bragg
v. Railroad, 192 Mo. 350; Lee v. Railroad, 195 Mo.
425; Ahlfeldt v. Mexico, 129 Mo. App. 199; Lewis v.
Railroad, 142 Mo. App. 585; Canfield v. Railroad, 98
Ill. App. 1.   (3)   The verdict was not excessive, and
the final judgment of $15,000 should not be further
reduced.   Oglesby v. Railroad, 150 Mo. 137; Corby v.
Telephone Co., 231 Mo. 417; Yost v. Railroad, 245 Mo.
219; Thompson v. Lumber Co., 147 S. W. (Tex.) 296;
Railroad v. Spurney, 197 Ill. 471; Railroad v. Dunn,
106 Ill. App. 194; Light Co. v. Rombold, 68 Neb. 54;
Kalfur v. Railroad, 161 N. Y. 660; Williamson v. Rail-
road, 65 N. Y. Supp. 1054; Railroad v. Scott, 21 Tex.

Civ. App. 24; Railroad v. Abbey, 29 Tex. App. 211; Railroad v. Tolliver, 37 Tex. Civ. App. 437; Hollenbeck v. Railroad, 141 Mo. 97; Shohoney v. Railroad, 231 Mo. 131. (4) The court did not err in permitting the questions asked the jury on *voir dire*. Meyer v. Mfg. Co., 67 Mo. App. 389. (5) The court did not err in overruling defendant's motion for a new trial. The verdict was not so large as to indicate passion or prejudice on the part of the jury. Cases under point 3; Cook v. Globe-Democrat, 227 Mo. 471. (6) The court did not err in giving instruction 2 on behalf of plaintiff. Corrister v. Railroad, 25 Mo. App. 627; Kain v. Railroad, 29 Mo. App. 62; Britton v. St. Louis, 120 Mo. 444; Allen v. Springfield, 61 Mo. App. 273; Sherwood v. Railroad, 132 Mo. 345; Taylor v. Iron Co., 133 Mo. 363; Hartpence v. Rogers, 143 Mo. 633; Dwyer v. Transit Co., 108 Mo. App. 162; Lead Co. v. Railroad, 123 Mo. App. 408; Robertson v. Railroad, 152 Mo. 389.

ROY, C.—Action for damages for personal injuries. Verdict for $20,000. There was a compulsory remittitur of $500, and a judgment for $15,000, from which the defendant has appealed. Plaintiff's age is not shown. He has a wife but no children. He testified that he had lived in Kansas City twenty-five or thirty years, and had been in the service of the defendant about five years as a motorman. He stated that he was experienced in that work. He was acting as a motorman on defendant's car No. 123 at the time of the alleged injury at about 9:40 p. m., June 11, 1909. His car was going east on the defendant's line from Kansas City to Independence. The place of the accident was in the country, about one hundred feet west from Tullis station, and three or four hundred feet east of Smalley station. It is a double track; the south track was used for cars bound eastward, and the north track for westbound cars. Those tracks

were eight or ten feet apart. They were straight from Smalley to Tullis and then curved to the northward; there was a moderate upgrade. Beaumont station was a distance of two short blocks eastward from Tullis. There was a cluster of ordinary incandescent lights on the trolley pole at Tullis. The evidence is conflicting as to whether they were burning. Plaintiff testified that they were not. One witness for defendant stated that they were. Plaintiff's car No. 123 was an ordinary trolley car with the usual vestibule enclosed in front with sheet-iron waist high to the motorman as he sat on his stool. The windows of the vestibule had three sashes which opened by being dropped. The center and left sashes were up and closed. The right hand sash was down and opened. There was an ordinary incandescent light, and also an arc light called a "headlight," attached to the front of the vestibule of plaintiff's car. The arc light had a reflector to throw the light ahead along the track.

The injury was caused by a collision between plaintiff's car and a "work-car," sometimes called the "mogul." That car was an ordinary box car fitted with a motor, controller and vestibules similar to those on plaintiff's car. There were doors in each end and also in the middle of both sides. There were windows on both sides, one near each end, but none in the end. There were five sixteen-candle incandescent lights in a row in the center of the roof inside the car. It had an arc headlight.

Two witnesses for the defendant stated that the car extended six inches above the end door, but plaintiff testified that it was about eighteen inches above the end door. There were two lanterns lighted and sitting inside of the car on the floor. That car was in charge of Wilbur F. King, who acted as motorman, and with him were Jennings and Walters. That car had preceded plaintiff's car on the same track. There is no evidence showing that plaintiff was aware of its

presence ahead of him.  Plaintiff's car was going at ten miles an hour, and he testified that the car could have been stopped in seventy or eighty feet.  Defendant's evidence was to the effect that it could have been stopped within thirty or forty feet.  The work car stopped at the place of accident for the purpose of unloading tools and material for track repairs.  There was no red light or light of any kind on the rear end of the work car.  The rule and custom of defendant required a red light on the rear of all cars at night as a danger signal.  The evidence as to such rule and custom was objected to by defendant on the ground that such rule and custom were not pleaded.  The objection was overruled.

King testified that he could give no excuse for the absence of that red light.  At the trial it was a contested question as to whether the rear door of the work car was open at the time of the accident and as to whether the lights in that car were then visible to the plaintiff.  The plaintiff testified that no lights of any kind were visible on the work car or in it either before or after the collision.

Plaintiff's witness Diamond, a passenger on plaintiff's car, stated that from the inside of the car he could see nothing ahead on account of darkness.  Mr. Roberts, another passenger, witness for plaintiff, testified that after the accident he went out of the car and forward so that he stood by the side of plaintiff's car near the front end and saw what appeared to be reflected lights in the work car.

Jennings, one of the crew of the work car and witness for the defendant, said that after the car stopped he was standing leaning out of the door on the north side, looking back at plaintiff's car, which at first was about two blocks away, and said that he supposed it would stop and not run into the work car.  That when it got fifty or seventy-five feet away he hallooed, "Look out, the car is going to hit us," and

jumped; that Walters was in the west end of the work car, and ran out of the west door with a lantern and got off the car.

King testified that he heard Jennings cry out, and, looking forward, saw the headlight of plaintiff's car through the door of the work car and that the collision immediately followed.

One Sproul, a passenger, testified for the defendant, stating that he was chewing tobacco and that between Smalley and the place of the accident he twice put his head out of the window to spit and saw the light in the work car a block ahead. The evidence shows that it was raining at the time of the collision; there was water upon the windows of the vestibule. The testimony for both sides was to the effect that rain on the windows and on the glass of the headlight served to obscure the vision and light.

King testified:

"Did you have your windows open or closed in front of you? A. I had it open. I started with it closed but I afterwards dropped it.

"Q. After you dropped it did you have any difficulty in running your car on account of the rain? A. No, sir.

"Q. Why did you drop it? A. Because the heavy mist that was falling gathered on the glass.

"Q. Could you have let down one on the side. Did you have a side window that you could let down next to the front window? A. Yes, sir, they were there but they were down when I had started.

"Q. They were down to start with? A. Yes, sir.

"Q. Now, do you know whether or not the window in the front of No. 123 could be let down the same as yours? A. Yes, sir, that could be let down."

Mr. Ward, the conductor of plaintiff's car, testified for defendant: "Q. When there was water on the windows so that you could not see through them what was the proper thing to do under those circum-

stances? A. If you could not keep your glass clean in front of you so that you could see through it, the proper way would be to put the window down to the side of you, or if you could not see that way, the one to the front of you. It has been the custom, most all the boys do that."

The plaintiff did not testify as to whether he looked through the open window on the right hand side of the vestibule or through the closed window in front of him. He testified that he was looking constantly straight ahead of him, and that as he left Smalley he saw the headlight of a westbound car at Beaumont, and that such car was from one to four car lengths east of the work car when the collision occurred. The other evidence corroborated his statement as to the westbound car.

Plaintiff testified that he did not see the work car until he was within fifteen or twenty feet of it and that he then threw off the power and threw on the emergency brake, but the collision followed so quickly that his foot was caught and crushed, requiring amputation about five inches below the knee. He was seven weeks in the hospital. The leg heals at times and then breaks out again. The surgeon testified that another operation would be necessary to make the wound heal and prepare the leg for an artificial limb. He was out of employment for about a year. The week before the trial he began work as a night watchman for the city at a salary not shown. He was earning $70 or $75 a month when hurt.

The negligence of defendant and plaintiff's injuries were alleged in the petition as follows:

"That on the eleventh day of June, 1909, at about 9:38 o'clock p. m. of said day, this plaintiff acting in his capacity as motorman as aforesaid, was running said car from Kansas City, Missouri, to Independence, Missouri.

"That at said time of night it was very dark and raining and by reason thereof it was impossible for this plaintiff to see any object on said track at any distance from his car unless said object was equipped with lights or illuminated in such manner as to give this plaintiff a warning and notice that said object was on the track.

"That at said time the defendant carelessly and negligently caused, suffered and permitted its work car, commonly known and hereinafter designated as a mogul car, to remain on said track in front of the car which this plaintiff was operating, without having any lights or illuminations of any kind thereon to warn this plaintiff or give him notice of the danger to which he was subjected by reason of said mogul car being on said track.

"That at said time on said day, this plaintiff was operating his car at the usual and ordinary rate of speed and when said car as operated by this plaintiff arrived at a point between Smalley avenue and Beaumont stations it collided violently with said mogul car, as said mogul car was standing on said track as aforesaid.

"That said collision was caused wholly by reason of the carelessness and negligence of the defendant in causing and allowing said mogul car to stand on said track at said place, without any lights or illuminations being placed on said mogul car and without warning this plaintiff in any manner of the existence of said mogul car on said track at said place.

"That when said car so operated by this plaintiff collided with said mogul car as aforesaid, the front vestibule of the car operated by this plaintiff was crushed and mashed in, in such a manner that this plaintiff's foot and limb were mashed, bruised, lacerated and injured to such an extent that it became necessary for plaintiff's right foot and limb to be amputated at a point about four inches below the knee,

and at said time and place by reason of negligence of the defendant as aforesaid, this plaintiff received a cut over the eye and on his nose and this plaintiff's body was bruised, crushed and injured, and by reason of the injuries which this plaintiff received at said time and place, and caused by negligence of defendant as aforesaid, this plaintiff has been rendered a cripple for life, and by reason of said injuries this plaintiff has suffered great bodily pain and mental anguish in the past and will continue to so suffer for the remainder of his life; and plaintiff says that before he received said injuries he was a stout and able-bodied man and able to work and earn five dollars per day as result of his labors, but since he received said injuries and by reason thereof, that plaintiff has not been able to and has not performed work or labor of any kind and this plaintiff says that by reason of the premises his capacity and ability to work and earn wages have been greatly diminished for the remainder of his life and so by reason of the carelessness and negligence of the defendant as aforesaid, this plaintiff has lost and will lose the wages which he would have been able to earn had he not been injured by the wrongful carelessness and negligent acts of the defendant as aforesaid.

"And this plaintiff says that by reason of the premises he has been compelled to expend and become liable for doctor's bills, for medicine, for surgeons, for hospital bills and for nurse hire in the sum of seven hundred fifty dollars, and plaintiff says that by reason of the premises he has been damaged in the sum of fifty thousand dollars."

The answer was a general denial and a plea of contributory negligence.

During the examination of the jurors on their *voir dire*, plaintiff's counsel asked if any one of the panel was connected in a business way with the American Fidelity & Accident Insurance Company. To

which counsel for defendant objected and asked that the jury be discharged. The objection was overruled.

The supplemental motion for a new trial contains the following: "Because in examining the panel of jurymen preparatory to making the challenges and selecting the twelve jurymen to try the cause, the court over the objections of the defendant permitted Mr. Brewster, attorney for the plaintiff, to ask the jurymen on their *voir dire* the following question: 'Is any gentleman on the panel an officer or connected in a business way with the American Fidelity and Accident Insurance Company?' To which ruling of the court the defendant then and there excepted and asked that the jury be discharged, which exception, objection and motion to discharge the jury was overruled; that said case was being defended by the American Fidelity and Accident Company, being then and there represented by Mr. Chas. M. Howell, the above question was asked for the purpose of informing the jury and calling attention of the jury to the fact that the case was being defended by an accident insurance company, which would be liable to pay any judgment obtained in the case, and was prejudicial to the defendant."

Among the instructions the court gave the following for the plaintiff:

"2P. The court instructs the jury that if you find for the plaintiff you may in assessing his damages take into consideration the nature and extent of plaintiff's injuries, if any, sued for in this case, and the jury may further take into consideration whether or not said injuries, if any, are of a permanent character. The jury may also take into consideration such physical pain and mental anguish, if any, as you find and believe from the evidence plaintiff will suffer in the future on account of said injuries, if any, sued for in this case, and you may assess his damages at such an amount as you find and believe from the evi-

dence will fairly compensate him for his injuries, if any, so received, not to exceed the sum of fifty thousand dollars.''

During the argument of counsel for plaintiff to the jury the following occurred:

''I ask you, gentlemen of the jury, this question. Suppose that instead of Mr. Kinney being the plaintiff in this case, the woman who was a passenger on that car was the plaintiff here; and suppose that it was shown, as it has been shown here, that there were no lights on the back end of the mogul car, and that it stopped dead on that track and that it was a rainy, dark, drizzling night, and that the car upon which Kinney was riding ran into that car and that woman's limb was cut off, what would your verdict be in that case? And gentlemen of the jury, let me ask you, if that was the case here, that Judge Johnson was defending, can't you hear—can't you hear the defendant's witnesses coming on the stand and saying that you could not stop one of these cars within 250 feet?

''Mr. Howell: I object to that because under the law the measure of negligence is different and therefore that argument is improper.

''Mr. R. R. Brewster: I say it is different, and I will tell you where it is different. They were bound to exercise, as to a passenger—

''Mr. Howell (interrupting): I object to any argument along that line. My objection is that it is different, and improper to argue it.

''Mr. R. R. Brewster: I will withdraw it, but I want to say this—

''The Court (interrupting): The objection will be sustained.

''Mr. Johnson: I ask your Honor to censure the counsel for making that kind of argument to the jury.

''Mr. Brewster: And I ask you to, if I am in the wrong.

"Mr. Johnson: The Court said you were in the wrong.

"The Court: The arguments will be withdrawn from the consideration of the jury and the jury will not consider them in arriving at their verdict. . . .

"Mr. Brewster: I don't know how you feel about it, but here is the plaintiff, who is in the employ of the defendant, their trusted employee, who went about driving this great car, in whose charge they put the lives and limbs of your fellow-citizens, and here he is injured in the performance of his duty; here he is maimed and crippled as he stood at his post, and they are not saying to Kinney, 'You were injured through the negligence of this company and we will gladly pay you for it,' but they are saying, 'Come into court and fight us; fight all our combined power which we have at our command; fight our claim agents, fight our legal department, fight us through the courts and then if you can recover for your crippled leg you can have the money.'

"Mr. Howell: I object to that, because the argument is offered only for the purpose of prejudicing the jury and not the argument of any facts in this case.

"The Court. Objection overruled.

"To which ruling and action of the court the defendant then and there at the time duly excepted and still excepts.

"Mr. Brewster: I am not going to let these interruptions interfere with the argument in this case, and you are not going to let them interfere with your mind in following the argument in this case. You perhaps know something of the tricks of the trade—

"Mr. Howell (interrupting): I object to that. I am making proper and legal objections here, all but one of which have been sustained by the court, and I object to the attorney arguing against my objections.

"Mr. Brewster: I am talking about the last objection, which was overruled by the court, and which was not a proper objection and which I say was made—

"Mr. Howell: I object to the counsel arguing about my making objections and criticising me for making objections, calling it tricks of the trade, etc. If the attorney will get within the record a little while we will get along better. I want to know what the ruling of the court is on this last objection.

"Mr. Brewster: I would like to know.

"Mr. A. W. Brewster: I would like to know what the objection is?

"The Court: The objection is overruled. I will ask you to be very careful to keep within the record.

"To which ruling and action of the court the defendant then and there at the time duly excepted and still excepts.

"Mr. R. R. Brewster: I will say there were two objections that at least were wrong or the court would not have overruled them, and I will say that I wouldn't let them interfere—

"Mr. Howell (interrupting): I object to him arguing about the rulings on objections either way, whether sustained or overruled. It is not a matter of argument to the jury, that is my point.

"The Court: Don't argue any further about objections."

I.  Appellant has briefed this case on the theory that it was the duty of plaintiff to run his car slow enough so that it would be possible for him to see any obstruction on the track in time to stop before striking it, even though such obstruction had no light or danger signal on it. We leave that question undecided for the reason that the fact is conceded that there was the ordinary arc headlight on plaintiff's

Negligence:
Contributory:
Evidence:
Question for Jury.

car. We will take it for granted that had plaintiff been looking through the open window on his right, and had there been no headlight of a westbound car in front of him, he could have seen the work car in time to have stopped before striking it. In other words, he could have seen the work car at the distance of eighty feet, that being the distance within which plaintiff testified that he could stop his car under the circumstances. Had there been no rain on the glass and no headlight of the westbound car in front of him, the plaintiff by looking through the glass in front of him, could have seen the work car at the distance of more than eighty feet. Under such circumstances it would have been contributory negligence in him to fail to see the work car. We do not undertake to decide whether, had there been no glare on the headlight coming toward him, the plaintiff would have been guilty of contributory negligence in failing to look through the open window on his right and thus avoid the obscuring effect of the rain on the glass in front of him. It is an unquestioned fact that the westbound car was, at the unlucky moment, coming westward from one to four car lengths east of the work car. It needs no testimony of witnesses to establish in court the confusing effects of such a headlight on one just in front of it or nearly so. At times it utterly obscures all objects not in the direct line between the observer and the light. No one, however, would claim that two trains of cars with locomotives should, when passing on parallel tracks, slacken their speed because of the confusing effects of the headlights. Nor should street cars do so under ordinary circumstances. Plaintiff was not required to slacken his speed because of the car coming in the opposite direction. We hold that it was a question for the jury whether, in the absence of the red light on the work car, and in the rain, with the glare of the headlight in his face, it was negligence in the

plaintiff to fail to see the work car. When different inferences may be drawn from undisputed facts, the question of negligence should be submitted to the jnry. [Paden v. Van Blarcom, 181 Mo. l. c. 128; Powers v. Transit Co., 202 Mo. l. c. 280.]

II. It was not error to admit evidence of the rule and custom of defendant to keep a red light as a danger signal on the rear end of its cars at night, though such rule and custom were not pleaded.

**Custom not Pleaded: Evidence Admitted.**

Thompson on Negligence, vol. 1, sec. 420, holds that evidence as to a custom is admitted on the question of ordinary care. It was said by this court in Bailey v. Kansas City, 189 Mo. l. c. 514: "If a cause of action is based directly on a violation of a duty imposed alone by a municipal ordinance, the pleading should set forth the specific ordinance in hand, because courts will not take judicial notice of its existence. [City of Tarkio v. Loyd, 179 Mo. l. c. 605; Inhabitants of Butler v. Robinson, 75 Mo. 192.] But if an ordinance of a city is used as a mere matter of evidence, no good reason is perceived why it should be pleaded; for to plead evidential facts is bad, and, on principle, the rule applies to ordinances. [Robertson v. Railroad, 84 Mo. l. c. 121; Danker v. Goodwin Mfg. Co., 102 Mo. App. l. c. 731.] Now, the case under the fourth amended petition is not based on the violation of a municipal ordinance, but is based on the violation of a duty imposed by general law. Therefore the objection in the form made was properly overruled."

The petition charges common-law negligence. The existence of the custom was merely an evidentiary fact tending to show lack of ordinary care on the part of defendant. It was not necessary to plead such evidentiary fact.

261Mo8

III. Complaint is made of the action of plaintiff's counsel in asking the jurors on their *voir dire* whether they were connected in a business way with the American Fidelity & Casualty Insurance Company. Mr. Howell, the attorney for the company, was in court ostensibly as counsel for the defendant, making a defense which was really in behalf of his company which was not a party to the suit on the record. It is claimed that it was an injustice to the accident insurance company to call the attention of the jury to the fact that it was making a defense and was liable to pay any judgment that might be rendered in the case. It was held in Meyer v. Mfg. Co., 67 Mo. App. 389, that such an inquiry was proper.

*Voir Dire: Attorney for Casualty Company.*

IV. Exception is taken to the conduct of the plaintiff's counsel in his argument to the jury. We have carefully gone through the record in order to assemble all the facts bearing on that question, in order that it may be comprehensively decided. The employees of defendant fully supported the plaintiff as to the facts of defendant's negligence. They testified that the rules and custom of the defendant required a red light as a danger signal on the rear end of all cars at night. They testified as to the absence of such danger signal. The one in charge of the work car testified that he could give no excuse for its absence. These employees testified that it was raining, and that rain on the window glass obscured the vision. Only one witness for defendant was criticised by plaintiff's counsel, or subject to criticism That was Sproul, who was not an employee of defendant. His evidence as to seeing a light in the work car as he looked ahead about a block was to some extent corroborated by Roberts, plaintiff's witness, who testified that after the accident, standing behind the

*Improper Remarks of Counsel: Verdict: Loss of Leg: Remittitur.*

work car and by the side of the front end of plaintiff's car, he could see a reflected light in the work car. There is an utter absence of anything tending to show that defendant did anything in connection with the trial that was not clean and legitimate.

This court has repeatedly refused to sanction a judgment for more than $10,000 for the loss of a leg. [Farrar v. Railroad, 249 Mo. 210; Brady v. Railroad, 206 Mo. 509; Newcomb v. Railroad, 182 Mo. 701.] In the latter case $762 was allowed for the surgeon's bill in addition to the $10,000. We are not now holding that in no case could a judgment for more than $10,000 for the loss of a leg be upheld. In this case the plaintiff's petition asks for $50,000. The plaintiff's instruction to the jury was to assess the damages in accordance with that instruction at not exceeding $50,000.

In Lessenden v. Railroad, 238 Mo. l. c. 265, VAL LIANT, C. J., speaking of the Partello case, 217 Mo. 645, in which there was an instruction authorizing the recovery of not exceeding $50,000, said: "Yet the trial judge gave that instruction after he had heard the evidence in the case. He doubtless labored under the erroneous impression that it would have been error to have refused it. But whilst the long practice authorizes the giving of such an instruction, and therefore it is not reversible error to do so when counsel ask it, yet when the jury return their verdict and the question of excessive damages arises, the probable effect of the instruction with its particular wording will be taken into account."

In Applegate v. Railroad, 252 Mo. l. c. 202, it was said: "That form of instruction, whilst it has been held not reversible error, has been criticised as a judicial *hint* that the court would approve a verdict in the sum mentioned in the petition."

With the petition calling for $50,000, and with an instruction authorizing it, in spite of the lower stand-

ard set by this court, plaintiff's counsel in his argument introduced into the case in place of plaintiff an imaginary woman passenger. When called to order on the objection of defendant, he proceeded to prejudice the jury against defendant's "claim agents." It is natural that juries are influenced by the sufferings and afflictions of the victims of such accidents. That is a fact in nature of which the plaintiff's counsel has a right to take advantage in argument. The defendant must endure it, however severely it may affect its interests. But such fact in itself furnishes a special reason why false and unjust prejudice should not be stirred in the feelings of the jury against the defendant.

The conduct of counsel for the plaintiff in this case was most reprehensible. What can be said in defense of a lawyer who causes a party to be summoned into court and then proceeds to treat him as if he had no rights which a court of justice is bound to respect? After the worst is said about the defendant, it still remains a fact that its conduct in the preparation and trial of this cause was a model of propriety and fairness as compared with the methods of plaintiff's counsel. It is our duty, however, not to be swept away by our indignation at such conduct. We believe that, under the evidence in this cause, a verdict for the plaintiff would have resulted in any event. Such being the case, the conduct of plaintiff's counsel is not reversible error, as it would have been in a close case. This court has hitherto refused to affirm judgments for damages for more than $10,000 for the loss of a leg. [Farrar v. Railroad, 249 Mo. l. c. 227; Brady v. Railroad, 206 Mo. l. c. 540; Newcomb v. Railroad, 182 Mo. l. c. 727.] We do not hold that in no case should the judgment exceed that amount; but we do hold that a verdict following such misconduct of counsel for plaintiff will not be allowed to stand for more than that amount. If the plaintiff

will, within ten days, enter a remittitur of $5000 as of the date of the judgment in the trial court, the judgment will be affirmed for $10,000 and interest at six per cent from the date of the judgment; otherwise it will be reversed and the cause remanded for a new trial. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.