THE STATE v. THOMAS LOWRY, Appellant.—12 S. W. (2d) 469.

Division Two, January 10, 1929.

*Emmett Golden, Jerome Simon* and *Verne Lacy* for appellant.

Stratton Shartel, Attorney-General, and L. Cunningham, Assistant Attorney-General, for respondent; A. M. Meyer of counsel.

HIGBEE, C.—The appellant was indicted in the Circuit Court of the City of St. Louis for murder in the first degree for killing Eugene N. Lovely, a policeman. By the verdict of the jury he was found guilty of murder in the first degree as charged in the indictment and his punishment assessed at death.

On September 25, 1926, Eugene N. Lovely and Thomas J. Jones, members of the St. Louis Metropolitan Police Force, were riding north on Sarah Street in the city of St. Louis in a police department automobile, on the sides of which were plainly painted the words "Metropolitan Police Department." Both men were clad in regulation police uniforms and wore their shields identifying them as officers. Lovely was driving the automobile at the time. While thus engaged they observed an automobile being driven west on Delaware Avenue at a rate of speed in excess of the speed limits prescribed by ordinance, and they started in pursuit of it at once. Appellant was driving this automobile and had for his companion therein a man named Louis Fagin.

The police officers saw appellant's car stop at a point west of Kingshighway, where it remained at the curb while one of its occupants entered a building. The two officers stopped their car at the curb behind appellant's car, and waited until the man who had entered the building returned to the car, and then continued to trail appellant's car as it drove away.

Officer Jones, testifying for the State, said that during the ensuing chase the appellant's car collided in some way with a car driven by a negro, and in separating the two cars the bumper of appellant's car was damaged to some extent, and that the negro called out to the two officers: "Get him, boss; he hit me."

The officers pursued appellant's car to the point of intersection of Lindell Boulevard and Kingshighway, where the officers drove ahead of and stopped in front of appellant's car in such a manner as to force the latter car to run into the curb, thus bringing it to a stop.

The officers alighted from the police car on opposite sides and started back to appellant's car. Jones was in the street, while Lovely was at the curb. As the officers approached the car, appellant ordered Lovely to put up his hands and told him that if he didn't he would "drop him." Lovely did not put up his hands and appellant opened fire on him. Lovely's revolver was in his holster and his hands were by his sides at the time. Jones was at that time unable

to see what was going on as the automobile obstructed his vision, but he heard shots fired, one of which struck him in the leg. The bullet was later found in his shoe and identified as one fired from a .45 caliber revolver. Lovely had two fatal gunshot wounds. One of the shots fired by appellant struck Lovely in the left breast and penetrated the lung, and the other passed through his neck. He died within a few minutes from the effects of these wounds. He also had a gunshot wound in one hand. A witness for the State testified he saw Lowry, while standing a few feet in front of Lovely, fire three or four shots directly at him in rapid succession, and saw Lovely fall to the ground.

Jones immediately ran around appellant's car and found Lovely prostrate, and appellant standing over him with a revolver in his hand. Appellant thereupon opened fire on Jones, and several shots were exchanged by these two men while appellant was fleeing from the scene. He ran north and east past the Chase Hotel to Kingshighway, where he found an automobile which he entered and drove rapidly away. That evening he was arrested at Pine Lawn, in St. Louis County, at which time he admitted the killing.

It is not disputed that appellant shot and killed Lovely. He testified in his own behalf and admitted that he fired two shots at Officer Lovely and saw him start to fall, but asserted as justification therefor that six months previously he had been ordered out of the city by certain members of the police force under threat of death if he remained, and when the officers stopped him on this occasion, in the manner related above, he believed his life was in danger because of such previous threats and shot to protect himself.

I. Appellant assigns error in overruling his challenge for cause of one of the panel of jurors, on the ground that the juror had "subscribed to a fund for the prosecution of men accused of killing police officers." The challenged juror testified on his *voir dire* that two or three years previously the police commissioners had asked a number of business houses in the city to contribute toward a fund for the benefit of police officers in the prosecution and reduction of crime.

"Q. Would the fact that a member of your firm has subscribed or contributed to such a fund to. fight crime prejudice you or disqualify you in any way against this defendant? A. No, sir.

"Q. You have no feeling against him because he is charged with killing this officers? A. None whatever.

"By Mr. Golden (defendant's counsel): Q. Your firm has contributed to the fund for the prosecution of men accused of the crime of killing a police officer? A. I don't know about that.

"Q. Isn't that the principal purpose of that fund that you have subscribed to? . . . That association was gotten up about two

years ago among a lot of business people around St. Louis? A. Yes, sir.

"Q. And they agreed to pay so much for the prosecution of a man accused of killing a police officer? A. I don't remember the details of that at all. I understood it was for the benefit of the police commissioners to use as they saw fit, and possibly that may be one of the things that is included in it.

"BY THE COURT: I don't think he is disqualified. He has not subscribed to any particular matter, just as a citizen subscribing to a cause which he thinks is worthy. He says it won't interfere with his ability to pass upon the merits of this case. I will overrule the challenge."

It was proper to inquire if any member of the panel of jurors had a financial interest in the result of the case on trial. [Becker v. Koester (Mo. App.), 295 S. W. 818 (1); Kinney v. Met. St. Ry. Co., 261 Mo. 97, 114, 169 S. W. 23.] In this instance the juror challenged was not quite clear as to the purpose of the fund to which his company had subscribed. He understood it was for the benefit of police officers in the prosecution and reduction of crime; that it was for the benefit of police commissioners to use as they saw fit. The court found the juror "had not subscribed to any particular matter; just as a citizen subscribing to a cause which he thinks is worthy," and that he had no prejudice or bias against the defendant.

"The expression, or the existence of bias or prejudice against *crime*, constitutes no cause of challenge." [State v. Burns, 85 Mo. 47, 49; State v. Stephens, 195 Mo. App. 34, 36, 189 S. W. 630; State v. Daniels (Mo. Sup.), 263 S. W. 165, 168 (2).]

The challenge was properly overruled.

II. Appellant charges error in the admission in evidence of certain statements shown to have been made by him at the time of his arrest and shortly thereafter, claiming they were made under duress.

On the evening of the day of the killing, a police captain, with three other officers, found appellant hiding behind a victrola in a house at Pine Lawn in St. Louis County. Two of the police officers had entered the house and arrested appellant while the police captain remained outside. All the officers carried drawn revolvers. When the officers entered the house appellant said to them: "Don't shoot, you got me . . . I killed him." Shortly afterwards he said: "Well, go ahead if you are going to shoot; go ahead." Appellant was taken outside the house and presented to the police captain where he said that he "had to do it." The captain asked him why he had to do it. He replied: "I am wanted and I did not propose to be arrested." As stated above, all the officers carried drawn revolvers and the same were leveled at appellant when he was ar-

rested. The police captain testified, however, that as soon as appellant began to talk he put his revolver back in his holster and he did not see the revolvers of the other officers. The officers testified that there were no acts of violence directed against the appellant other than the display of weapons at the time of his arrest and that he was not abused or threatened and no promises were made.

Appellant's version of his arrest is somewhat different. He testified that at the time the officers broke into the house he was in bed, weak from loss of blood; that one of them said to him: "Come out of there or I will blow your head off;" that he then said: "We ought to kill him right there;" that the other officers replied: "Don't kill him in there;" that at this time the police captain was standing in the open door, pointing a revolver at him, and said: "You will kill a policeman, won't you?" That at this juncture the police captain struck appellant on the head first with his revolver and then with a flash light; that the captain then said: "I believe I will kill him right here," but one of the officers protested against his doing so because a man was standing on the porch; that they then took him to the police station and that his arm was bleeding and he was weak from loss of blood; that he begged for medical treatment which the officers refused him, saying: "You are going to tell us what you done and how you come to do it before we give you anything but a lot of abuse;" that he then told them he had shot Officer Lovely to protect himself because he had been ordered out of St. Louis under the threat of death.

The testimony of the police officers, relative to what took place at the station, is in substance as follows:

In response to questions put to him by the police captain, appellant said that he met his companion, Fagin, in Collinsville, Illinois, the previous evening, where they stayed all night; that they arrived in St. Louis the next morning and went to Fagin's home on Thomas Street, after which they drove about the city, and while they were doing so they were pushed to the curb by two police officers; that he jumped out of the car with his .45 Colt automatic and told Officer Lovely that if he did not put up his hands he would have to stop him; that the officer failed to stop, and he shot him; that he did not know how many times he fired; that he then ran through the lawn of the Chase Hotel to an alley, where he found an automobile with its motor running, in which he escaped; that he rode around in this automobile for a while and then abandoned it and took a taxi to the home of an acquaintance in Pine Lawn, where he was afterwards found and arrested.

The testimony of the police officers was that at the time this statement was made by defendant at the police station there was no display of revolvers; that the statement was made voluntarily without

the use of force or threats or promises of any kind to induce the confession.

"A confession, to be inadmissible, must be made to an officer of the law in consequence of improper influences exerted by him, and, if no threats of harm or promises of worldly advantage be made by such officer, the confession is admissible. The fact that the defendant was under arrest when he made the confession does not render it inadmissible; nor does mere adjuration to speak the truth, no threats or promises being made. [State v. Brooks, 220 Mo. 74, 119 S. W. 353 (syl.) pars. 1 and 2.] The fact that a voluntary confession was made without the accused being cautioned or warned that it might be used against him does not affect its admissibility. [16 C. J. 723, sec. 1482; State v. Barrington, 198 Mo. 23, 27, 95 S. W. 235.]" [State v. Johnson (Mo. Sup.), 289 S. W. 849.]

This testimony of the police officers was heard by the court in the absence of the jury. Appellant objected to its admission on the ground of duress, due to his weakened condition at the time of the arrest, the abuse and treatment of the officers arresting him, and the refusal to grant him medical attention, as above stated. Thereupon the jury re-entered the box and the above outlined testimony was admitted in evidence over the appellant's objection. The court instructed the jury that it was their province to determine whether or not such statements were voluntary, and defined "voluntary" as "spontaneously, of one's own will without being moved, influenced or impelled by others." We think the court correctly admitted the testimony.

III. While the trial was in progress, the court permitted the circuit attorney to indorse upon the indictment the names of three witnesses who testified for the State. [Sec. 3889, R. S. 1919.] Appellant objected and asserts error as a result of the court's permitting this to be done. The circuit attorney made a showing of good faith and the court offered defendant time to consult the witnesses. This is largely a matter within the sound discretion of the trial court. The testimony of these witnesses had to do with the shooting of the police officer by appellant and his flight from the scene, none of which was denied by appellant on the witness stand, and all of which was in effect more or less cumulative to other evidence in the case. [State v. Barnes (Mo. Sup.), 289 S. W. 562.]

IV. The court permitted police officer Jones to testify that the negro chauffeur, whose automobile was struck by appellant's automobile, cried out to the two officers: "Get him, boss; he hit me." This evidence was admitted over the objection of appellant that it was hearsay. From a careful read-

ing of the record on this point, we take it that the officers were pursuing the appellant for fast driving. The State introduced, over the objections of appellant, the speed ordinances of the city of St. Louis, by which the speed of automobiles is limited to twenty miles an hour. Jones testified that appellant's car was being driven at the rate of sixty miles per hour a portion of the time and the remainder of the time at a very high rate of speed; that defendant's car collided with and damaged the negro's car, and that defendant left the scene of the injury and accident without stopping to give his name, address and residence, as required by Section 27, Laws of Missouri, Extra Session, 1921, par. f. The failure to so comply with said requirement is declared to be a felony. [Par. c, Sec. 29, Laws 1921, Ex. Sess., p. 105.] The negro's exclamation was admissible as a part of the *res gestae*. Furthermore, the negro's exclamation was harmless as it had no bearing upon the issues of this case except as it might tend to prove that information was brought to the officers that appellant had violated the law by colliding with another car and fleeing from it. We think it was properly admitted, as Jones testified to having seen appellant's car come in contact with the chauffeur's car, and saw the damage done to appellant's bumper as a result of separating the two cars.

V. The cause was submitted to the jury upon the issues of murder in the first and second degrees and self-defense.  Appellant contends that the killing could have been no more than manslaughter because the homicide was committed while resisting an illegal arrest.

Lovely wore his uniform and defendant knew him to be an officer. It is true the officers held no warrant for the arrest of appellant or his companion. But, as we have seen, appellant was guilty of a felony in leaving the scene of an accident, as also of violation of the speed ordinances of the city, a misdemeanor, in the presence and view of the officers. It was their right and duty to arrest appellant without a warrant. One who kills an officer while resisting a lawful arrest cannot be acquitted on the gound of self-defense. A homicide committed under such circumstances is murder in the first degree. [State v. McNally, 87 Mo. 644, 652; State v. Peters (Mo. Sup.), 242 S. W. 894, 896 (7).]

As a matter of fact, shortly after his arrest appellant stated that he shot Lovely as soon as the latter had gotten out of his automobile and started toward appellant's automobile. Appellant ordered Lovely to throw up his hands, threatening to stop him if he did not. We have held that a malicious killing, even in resisting an unlawful arrest, is murder in the first or second degrees and not manslaughter in any of its degrees. [State v. Johnson, 76 Mo. 121, 128.]

VI. As tending to show that he acted in self-defense, appellant sought to testify that six months before the homicide, at a time when he had been arrested for some other offense, certain police officers had ordered him to leave the city, threatening his life if he did not do so. This evidence was excluded upon objections by the State, and appellant claims error.

The deceased is not shown to have been present or to have had any knowledge of this conversation between appellant and such police officers. There is no showing that he was connected with the police force at that time, six months before the homicide. We think the evidence was inadmissible, both because of its remoteness in point of time and because there is no evidence that the deceased participated in or had any knowledge of such threats. Conceding that such remarks were made by some members of the police department, they would not justify or excuse appellant in shooting a police officer whom he saw approaching for the purpose of arresting him. Appellant cites certain cases on this point which he claims sustain his theory. It might be that a person, threatened by a member of an organization, whose object and purpose are known to be unlawful, would be justified in assuming that all members of the organization were like-minded toward him, but we cannot go to that extreme with reference to a police department, organized for the purpose of maintaining the peace and protecting the public. There was nothing in the circumstances of this case that would justify the defendant in believing that Lovely intended more than a lawful arrest.

"Evidence of threats of third persons against defendant is as a rule irrelevant and inadmissible, until it is shown that defendant had reasonable ground to believe that such third person was acting with decedent in a common design to injure or kill defendant." [30 C. J. 242, sec. 479.]

VII. Appellant complains of error in Instruction 5 for the State—that it is the duty of a police officer to arrest without warrant any person whom he has probable cause to believe has committed a felony: that it was a felony for anyone driving a vehicle on a highway in this State, knowing that an injury has been caused to a person or damage has been caused to property, due to culpability of the operator or driver, or to accident, who shall leave the place of said injury, damage or accident, without stopping and giving his name, residence, including city and street number, motor vehicle number and chauffeur's or registered operator's number, if any, to the injured party or to a police officer, or to a police officer in the vicinity, or if no police officer is in the vicinity, then to the nearest police station or judicial officer, and if the jury shall believe from the evidence beyond a reasonable doubt that the

deceased Lovely at the time of the tragedy in question was a duly appointed and acting police officer of the city of St. Louis, Missouri, and that he had probable cause to believe and did believe that the defendant was guilty of the offense of leaving the scene of an accident as herein above detailed, then the said Lovely not only had the right, but it was his duty under the law, to arrest the defendant.

It is said that the instruction submits a question of law to the jury and that there was no evidence of leaving the scene of an accident in this, that there was no evidence the defendant's car had damaged another car, and that it was a comment on the evidence. We think there is no merit in either of these contentions, and that the instruction was clearly authorized by the evidence and Section 27, paragraph f, of the Motor Vehicle Act, cited supra.

VIII. In his motion for new trial appellant complains of Instruction 7, given for the State, that if the jury should believe from the evidence that the defendant did not know that Lovely was a police officer of the city of St. Louis at the time he shot deceased (if you find he shot the deceased) then the defendant had the right to shoot Lovely if he did so in the lawful defense of his person as explained in Instruction 4. The contention is that there is no evidence that defendant did not know Lovely was a police officer. Appellant is clearly right in this contention. Lovely and his companion, Jones, wore their uniforms and it is clear from defendant's evidence that he shot Lovely because he was a policeman, in an unlawful effort to resist a lawful arrest. The instruction was too favorable to the defendant, but was harmless.

IX. Complaint is also made on Instruction 8, that even though defendant knew Lovely was a police officer, yet if the jury should find that Lovely did not have probable cause to believe defendant guilty of the offense of leaving the scene of an accident, then the defendant had a right to shoot Lovely if he did so in the lawful defense of his person, as explained in other instructions.

The criticism is that the instruction does not properly declare the law on the right of the defendant to resist an unlawful arrest, assuming the arrest was unlawful, and it assumed that police officers had a right to arrest a person with or without reasonable cause, and that a person so arrested or attempted to be arrested illegally, would only have a right to resist in the event he was in bodily danger.

The court had properly instructed the jury in Instruction 5 that if Lovely had probable cause to believe and did believe that the defendant was guilty of leaving the scene of an accident, etc., then said Lovely not only had the right, but it was his duty under the

law to arrest defendant. [See State v. Spaugh, 200 Mo. 571 (syl. 4), 596; Kelley's Crim. Law, sec. 55.] All the evidence, including that of the defendant, shows that Lovely, whom defendant knew to be a peace officer, was about to arrest the defendant for a felony committed in his presence and view, and that the defendant shot the officer down before Lovely had an opportunity to draw his revolver or to give notice of his intention to arrest the defendant. It was appellant's duty to have submitted to arrest.

"In making an arrest without a warrant it is usually held that a known police officer is not bound to disclose his character or authority, or give notice of his intention, until the party has submitted, as his known official character is sufficient in the first instance to require submission until formal notice of authority and intention to make an arrest, and the cause for it, can be given. But when the officer has effectually consummated the arrest he should inform the prisoner of his authority, and the cause for which the former is arrested. The reasons for so doing are as great, if not greater, than where there is a warrant." [5 C. J. 419, sec. 50.]

Notice is not required "where the arrest is made at the time an offense is committed or attempted or on fresh pursuit." [Ib. 420, sec. 51.]

In the circumstances of this case and on the defendant's own evidence, as we have said, he should have submitted to arrest. His wilful, deliberate and malicious act in shooting the officer was the act of an outlaw; it was clearly unjustifiable, inexcusable and without a mitigating circumstance in any possible view of the case. The instructions criticised were too favorable to the defendant and should not have been given. "The person then who obstructs or resists such an officer in performing his duty rises up against the power of the State, and should be punished for his crime. . . . as one who disregards the well-being and good of the government of his State." [Perkins v. Wilcox, 242 S. W. 974, 977, quoting from State v. Dickerson, 24 Mo. 365, 368. See Sec. 3147, R. S. 1919.]

X. Appellant assigns error in refusing an instruction withdrawing from the jury's consideration the charge of murder in the first degree. We deem it unnecessary to burden this opinion with a copy of the indictment. It clearly charges the appellant with murder in the first degree. Neither in the motion for new trial nor in the brief of his learned attorneys is there any attempt to indicate wherein the court erred in refusing the instruction. As we have said, the evidence was ample to sustain the conviction.

XI. The court fully instructed the jury in writing on all questions of law arising in the case. Some of the instructions were entirely too favorable to the defendant.

The motion for new trial complains generally of error in the giving and refusal of instructions, and in the admission and exclusion of evidence, without any attempt "to set forth in detail and with particularity . . . the specific grounds or causes therefor," as required by Section 4079, Laws 1925, page 198. These general objections cannot be considered. [State v. Standifer (Mo. Sup.), 289 S. W. 856.] However, this being a capital case, we have examined the instructions given and refused and the complaints as to errors in the admission and exclusion of evidence, and find no basis for the complaints.

XII. Error is assigned in the failure of the court to instruct on circumstantial evidence. Officer Jones did not see the defendant shoot Lovely. He heard the shots, ran around the automobile and saw defendant standing over Lovely's prostrate form with a drawn revolver, and exchanged shots with defendant as the latter fled from the scene of the murder. An eyewitness, however, testified that he saw defendant fire several shots with his revolver pointed directly at Lovely and saw Lovely fall. The defendant testified also that he fired two shots at the officer and saw him start to fall. It is only when a conviction is sought on circumstantial evidence alone that an instruction of that character of evidence is required. [State v. Cox (Mo. Sup.), 267 S. W. 884; Kelley's Crim. Law, sec. 395 and cases cited.]

XIII. Error is assigned to the admission of the speed ordinance, because there was no evidence of defendant's residence in the city of St. Louis or continuous presence therein for forty-eight hours. Evidence of that character is required to support a conviction of a violation of a speed ordinance unless certain signs are posted where the boundary of the municipality joins or crosses a public highway, advising the traveler of such speed ordinance. [Laws 1921, Ex. Sess., sec. 24, p. 99.] The statute referred to applies to a prosecution for a violation of the speed ordinance, but has no application to a prosecution for homicide. Furthermore, the evidence incidentally shows that appellant has resided in the city of St. Louis for many years.

We have carefully gone over the record, the motion for new trial, appellant's brief and assignments of error, and find nothing further requiring or justifying consideration. The judgment is accordingly affirmed.

*Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur. Date of execution set for February 1, 1929.