THE STATE v. MILTON TEDDER, Appellant.

Division Two, June 8, 1922.

1. **PERJURY**: Instructions: Failure to Define Corroboration: Invited by Defendant. Where defendant in a prosecution for perjury asked and obtained an instruction, dealing with the subject of "corroborating circumstances," couched in identically the same language as that contained in an instruction on the same subject given for the State, he was in no position to complain of the court's failure to define the terms "corroborating circumstances."

State v. Tedder.

2. ———: ———: ———: **No Objection or Exceptions.** As defendant did not request the court to define said terms, nor object to the State's instruction for failure to define them, nor assign such failure as a ground for a new trial, he cannot complain of such failure on appeal.

3. ———: ———: ———: **Positive Testimony by Two Witnesses.** As the State did not rely upon contradictory or inconsistent statements of defendant for conviction, but upon the positive testimony of two witnesses directly contradicting the alleged perjured testimony of defendant, the instructions given for the State and defendant were sufficient without defining the terms "corroborating circumstances."

4. ———: **Former Jeopardy: Different Offenses.** Where defendant was prosecuted for perjury, charged to have been committed by him when testifying in his own behalf, upon his trial upon a charge of larceny, of which he was acquitted, such acquittal constituted no bar to his prosecution for perjury committed by him when so testifying, as the offenses were wholly different, and his plea of former jeopardy was, therefore, properly overruled.

5. ———: **Demurrer to Indictment.** The indictment in this case fully met all the requirements of Section 3132, Revised Statutes 1919, and was sufficient as to both form and substance, and defendant's demurrer thereto was properly overruled.

6. ———: **No Errors at Trial.** The only instruction asked by defendant was given. He did not request the court to modify the instructions that were given, and these were as favorable to him as the law authorized. No error was committed against him in the admission or rejection of evidence. .Reduced to its final analysis, the case presented a sharp issue of fact as to whether he committed perjury in the larceny case, and upon this issue the jury found against him on substantial evidence. There was, therefore, no error committed in the trial of the case of which he could legally complain.

Appeal from Washington Circuit Court:—*Hon. A. H. Harrison*, Special Judge.

AFFIRMED.

*R. A. Frazier* for appellant.

. (1) The court erred in giving Instruction 2 for the reason it attempts to explain to the jury the *quantum*

of evidence necessary to a conviction, viz.: The evidence of more than one credible witness or by one such witness strongly corroborated by other evidence of facts or circumstances which convinces your minds of the truth of the testimony of such single witness. And, for the reason that the words corroborated and corroboration should not be used in any instruction without explanation as to what they mean. State v. Hunter, 181 Mo. 316. (2) The court erred in overruling defendant's plea of former jeopardy.. When one offense is a necessary element in and constitutes an essential part of another offense, and both were in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution for the other. State v. Williams, 152 Mo. 115; State v. Hunter, 136 Mo. 62; State v. Hall, 141 Mo. App. 701. (a) Twice in jeopardy is in violation of and forbidden by Article 2 of the Constitution, and in violation of Section 23 of Bill of Rights. State v. Moore, 156 Mo. 137; State v. Huffman, 136 Mo. 58. (b) In prosecutions for perjury committed at a former trial as a general rule the acquittal of defendant on a criminal prosecution in which he testifies, does not bar a subsequent prosecution against him for perjury committed on the former trial. But if the truth or falsity of the charges in the former indictment is the gist of the question under investigation so that a conviction for perjury will necessarily impart a contradiction of the jury's verdict of not guilty in the former trial then the subsequent prosecution will be barred. Standard Encyc. Proc. p. 554; United States v. Butler, 38 Fed. 498; Kentucky v. Cooper, 106 Ky. 909. (c) The acquittal of the accused on the trial of an indictment for an offense is a bar to a prosecution for false swearing based on his testimony at a former trial. 2 Wharton, Criminal Law, sec. 1599; State v. Webster, 206 Mo. 558. (3) The court erred in overruling defendant's demurrer to the indictment for the reason that said indictment does not state facts sufficient to constitute a crime under the law of this State. State v. Rhodes,

State v. Tedder.

220 Mo. 9.  (a)  Court erred in not sustaining defendant's demurrer for the reason that the indictment is fatally defective in this that the alleged false testimony given is not of necessity contradicted by the alleged false testimony.  And for the further reason that the alleged false testimony does not contradict or dispute the alleged material question, and there is a fatal variance between the alleged material question and the alleged false testimony.  United States v. Howard, 132 Fed. 325; Gibson v. State, 44 Ala. 17; Kelly on Crim. Law, sec. 828; State v. Coyne, 214 Mo. 344; State v. Keel, 54 Mo. 182; State v. Rhodes, 220 Mo. 9.

*Jesse W. Barrett*, Attorney-General, and *Marshall Campbell*, Special Assistant Attorney-General, for respondent.

(1)  The indictment is sufficient.  State v. Walker, 194 Mo. 367; State v. Huckeby, 87 Mo. 414; State v. Nelson, 146 Mo. 256; State v. Cave, 81 Mo. 450; State v. Miller, 44 Mo. App. 159; State v. Breitweiser, 88 Mo. App. 648; State v. Powers, 136 Mo. 194; State v. Morse, 90 Mo. 91.  (2)  It is the general rule that the acquittal of the defendant on a criminal prosecution in which he testified, does not bar a subsequent prosecution against him for perjury in his testimony.  State v. Moran, 216 Mo. 550; State v. Vandemark, 58 Atl. 715; State v. Bevill, 100 Pac. 476; Teagure v. Commonwealth, 189 S. W. 908; State v. Williams, 58 Pac. 476; Allen v. United States, 194 Fed. 664; Miles v. State, 165 S. W. 567; Dickerson v. State, 111 Pac. 857; Murff v. State, 172 S. W. 238.  (3)  The evidence is sufficient.  State v. Burnett, 253 Mo. 341; State v. Moran, 216 Mo. 550; People v. Veld, 139 N. Y. Supp. 788; People v. Doody, 72 N. Y. (App. Div.) 372; Sullivan v. Commonwealth, 165 S. W. 696; Hashagen v. United States, 169 Fed. 396.  (4)  Where the defendant failed to request instructions on all the law in the case, the failure of the court to so instruct is not error.  State v. Fisher, 162

Mo. 668; State v. Melvin, 166 Mo. 565; State v. West-lake, 159 Mo. 669; State v. Cantlin, 118 Mo. 100; State v. Hilsabeck, 132 Mo. 348; State v. Sacre, 141 Mo. 64. Objections to instructions must be specifically stated, and unless so stated in the motion for new trial there is nothing for review. State v. Rowe, 271 Mo. 94; State v. Daugherty, 228 S. W. 788; State v. Gallagher, 222 S. W. 467; State v. Chissell, 245 Mo. 555. (5) In a charge of perjury it is necessary that the evidence which was perjured, be material to sustaining the facts in the matter in which the perjury was committed. State v. Jennings, 278 Mo. 552; State v. Ackerman, 214 Mo. 332; State v. Faulkner, 175 Mo. 568; State v. Day, 100 Mo. 249.

RAILEY, C.—On August 25, 1920, appellant was indicted by the grand jury of Washington County, Missouri, for the crime of perjury. Without caption and signatures the indictment reads as follows:

"The grand jurors of the State of Missouri, empanelled, sworn and charged to inquire within and for the body of the County of Washington and State of Missouri, upon their oaths present and charge, that heretofore, to-wit, at the August term of the Circuit Court of Washington County, on the 23rd day of August, 1920, at the county aforesaid, before the Hon. E. M. Dearing, Judge of the Twenty-first Judicial Circuit of the State of Missouri and *ex-officio* Judge of the said Washington County Circuit Court, a certain issue between the State of Missouri and Milton Tedder, charged with grand larceny for the stealing of chickens in the nighttime, wherein the said State of Missouri was plaintiff and the said Milton Tedder was defendant, came on to be tried in due form of law, and the said court then and there having competent authority in that behalf, the said issue was then and there tried by a jury of said county in that behalf duly sworn and taken between the parties aforesaid; upon which said trial Milton Tedder then and there appeared as a witness for and

on behalf of himself as defendant in said cause, in the
action aforesaid, and was then and there duly sworn
and took his oath before the said court; which oath was
then and there administered to the said Milton Tedder
by S. D. McGready, who was then and there deputy clerk
of said court, and having full power and competent au-
thority to administer the said oath to the said Milton
Tedder in that behalf, that the evidence which he, the
said Milton Tedder, should give to the court there, and
to the said jury so sworn as aforesaid, touching the
matter then in question between the said parties, should
be the truth, the whole truth and nothing but the truth.
And that, at and upon the trial of said issue so joined
beween said parties aforesaid, it then and there be-
came and was a material question whether the said
Milton Tedder stole nine chickens on April 27, 1920, and
during the nighttime from one Eliza Parmley and was
thereby guilty of grand larceny for the stealing of said
chickens during the nighttime; and that said Milton
Tedder then and there on the trial of said issue and
upon his oath aforesaid feloniously, wilfully, corruptly
and falsely before the court and jury aforesaid did de-
pose and swear in substance and to the effect, following,
that is to say, that he, the said Milton Tedder, on April
27, 1920, between the hours of eight and nine o'clock p.
m., purchased nine chickens from Aquilla Cole and
Nealy Stoner and paid therefor $6.75; and further
stated that said Cole and said Stoner came to his house
between the hours aforesaid, and that they were riding
on a certain black horse and had said nine chickens in
a sack; and further said that he, the said Milton Tedder,
thereafterwards and at Belgrade, Washington County,
Missouri, recognized Nealy Stoner as one of the boys
who came to his house on April 27, 1920, and got down
off of said black horse and took the said nine chickens
placed in said sack as aforesaid and brought said chick-
ens into the home of said Milton Tedder and sold said
chickens to said Milton Tedder for the aggregate sum
of $6.75; whereas, in truth and in fact, the said Aquilla

Cole and Nealy Stoner did not ride on said black horse up to said Milton Tedder's home on said April 27, 1920, and did not have said nine chickens or any other chickens in said sack and that said Cole and Stoner did not sell to said Milton Tedder said nine chickens for said aggregate sum of $6.75, but that the said Milton Tedder did on April 27, 1920, at and in the county and state aforesaid and during the nighttime, steal, take and carry away from the premises of Eliza Parmley the chickens described as aforesaid and which said nine chickens were the property of the said Eliza Parmley.

"And so the grand jurors aforesaid, upon their oaths aforesaid, say, that the said Milton Tedder, on the said August 23, 1920, at the county and state aforesaid, before the circuit court aforesaid, upon the trial aforesaid, did, in manner and form aforesaid, feloniously, wilfully, corruptly and falsely commit wilful and corrupt perjury; against the peace and dignity of the State."

Owing to the disqualification of Judge Dearing to sit in the case, Honorable A. H. Harrison was duly elected and qualified as special judge to try this cause. Defendant was formally arraigned and entered a plea of not guilty. He filed a demurrer to said indictment, which was overruled; and likewise filed a plea of former jeopardy, which was also overruled. The case was tried before a jury on March 8, 1921, and the following verdict returned:

"We, the jury in the above entitled cause, find the defendant, Milton Tedder, guilty of perjury, as charged in the indictment in this cause and we fix his punishment therefor at two years in the penitentiary.

"ARTHUR KELSEY,
"Foreman of the Jury."

On July 2, 1920, the prosecuting attorney of Washington County filed, in the circuit court of said county, an *information,* which, without caption, reads as follows:

"Chas. H. Richeson, Prosecuting Attorney within and for the County of Washington in the State of Missouri, informs the court that Milton Tedder on the— day of April, 1920, and in the said County of Washington, did then and there unlawfully and feloniously in the nighttime take, steal and carry away from the messuage of Eliza Parmley the premises upon which her dwelling house was situate, certain domestic fowls, to-wit: Eleven chickens, the property of the said Eliza Parmley, against the peace and dignity of the State.

"CHAS. H. RICHESON,

"Prosecuting Attorney."

Appellant was tried under said information, and acquitted by a jury. He was duly sworn as a witness, and testified in his own behalf, in the trial of said larceny case, under the information aforesaid. His testimony was taken in short-hand by the official stenographer of the court, in the trial of the larceny case supra. By agreement of counsel, in open court, the testimony of defendant, taken by said stenographer, was transcribed and read to the jury as his testimony, without objection; and is set out in the transcript on file herein. The evidence of defendant, as transcribed and read to the jury, is in substance as follows: That he was born and raised at Belgrade in Washington County, Missouri; that he was thirty-two years old and, on April 27, 1920, lived on a farm about two miles from Belgrade, close to the public road; that he was farming, had some stock and a few chickens; that he had known Miss Parmley, who testified in the case, since the 3rd of April; that he bought nine chickens about April 27, 1920, seven of which were of one kind; that of said number there was a brown chicken, and a black one with stripes on it; that he purchased these nine chickens, between eight and nine o'clock at night, on April 26, 1920; that the chickens were brought to his place after night, by two boys, who had the chickens in two sacks; that he did not know them at the time; that he did not know where they came from, as he first saw them standing

at his gate; that he was batching there, and no one else was present; that he did not know the boys; that one was about nineteen years old and the other one about sixteen; that one was dark complexioned, and the other a smaller boy; that they did not say where they got the chickens; that they told him they wanted to sell the chickens; that he, paid the boys seventy-five cents a piece for each of the nine chickens, making the total amount paid them $6.75; that he cut the wings of the chickens, so that they could not fly, and turned them out; that he also cut some of their tails; that he had an enclosure, in which he kept the chickens, and then turned them out on the public highway; that he made no effort to hide them; that he did not know these boys, and made no effort to ascertain who they were; that he afterwards saw one of the boys, that he identified at Belgrade, as being one of the boys that sold him the chickens; that his name was Nealy Stoner; that Stoner lived about one mile from Belgrade, and not over a quarter of a mile from Miss Parmley's; that he did not know the other boy for certain; that after recognizing Nealy Stoner, as one of the boys who sold him the chickens, he had no conversation with him; that at the time he saw Stoner, as above indicated, he knew the chickens had been stolen; that the chickens had been taken from him (defendant) at that time; that Stoner was alone when he saw him; that he had learned Stoner had gone away; that he issued a subpoena for Stoner from the circuit court, and he could not be found; that Stoner was not present at the trial; that he (defendant) did not say anything to Stoner when he recognized him, because there was a man with him (defendant) and he wanted to get back and procure a warrant for Stoner, without letting the latter know he identified him.

On cross-examination, defendant said he thought the other boy was Aquilla Cole; that he found out who Stoner was, after he (witness) was arrested; that he never worked with Nealy Stoner; that he first learned Miss Parmley had lost her chickens on the day he was

arrested; that he thought Aquilla Cole was one of the boys who sold him the chickens; that he knew Nealy Stoner's father; that he cut off the wings and tails of the chickens to keep them from flying; that Aquilla Cole lived in his neighborhood, and he (witness) saw him, every once in a while; that he never said anything to Aquilla Cole about the chickens.

Miss Lettie Parmley testified that she lost eleven chickens about April 26, 1920, during the night; that in the evening before she fastened the door of her henhouse with a chain; that on the next morning she found the door open and the chain broken; that they were all hens, and were mixed chickens; that she located them at the home of defendant Tedder; that she knew her chickens, and with the assistance of the sheriff, got them from defendant's premises; that they disappeared on Tuesday night, and she found them on Saturday afternoon; that she could not say the defendant stole her chickens; that he offered no resistance to her taking the chickens; that defendant never claimed to own the chickens.

Nealy Stoner testified that he lived about one mile and a quarter from Caledonia; that he knew the defendant, Milton Tedder, and had known him for about two years; that he worked with defendant at a threshing machine; that he met defendant several times after that; that he knew the defendant on April 27, 1920; that on the above date, witness did not own a black horse, but his father owned one; that he did not on the above date at night sell defendant nine chickens for $6.75; that he did not have said chickens in two sacks; that he did not steal said chickens; that he had nothing to do with said chickens; that he and Aquilla Cole did not go to defendant's house between eight and nine o'clock at night on April 27, 1920, riding a black horse; that they had no chickens and did not sell any to defendant for $6.75; that between July 2, 1919, and July 2, 1920, he did not by himself, or with Aquilla Cole, have nine chickens in a sack, ride a black horse to the home of

defendant and sell him nine chickens or any other number; that he never sold defendant any chickens at any time; that he was not in the county when the larceny case was tried, and was living in Franklin County, Missouri; that he knew nothing about said trial, and did nothing to evade being present.

On cross-examination, witness said he left Washington County about May 15, 1920, and went to Brule in Franklin County; that the rest of his family lived in Washington County; that he saw Tedder on the road, once, after the chickens were stolen, but never had any conversation with him then; that he knew before he left Washington County that defendant was arrested for stealing Miss Parmley's chickens; that he had no authority to ride his father's black horse, without his father's consent; that he often rode the horse to town; that at the time defendant was tried for stealing the chickens, he (witness) was working about twenty miles from Union.

Aquilla Cole testified that on April 27, 1920, he was living with his father near Potosi; that he was sixteen years of age; that on above date, he knew the defendant Tedder and also knew Nealy Stoner; that he did not sell him any chickens at any time, nor did he know anything about the Parmley chickens; that he never received any money from defendant for chickens; that he did not, with Nealy Stoner, sell any chickens to defendant and receive therefor $6.75, or any other sum; that he had known defendant about one month before April 27, 1920; that he saw defendant about a half dozen times, and had a few conversations with him; that he met defendant on the road, and had been to appellant's house twice; that defendant called him by name; that he saw defendant after the chickens were stolen and talked with him once.

On cross-examination witness said he was at home on the night of April 27, 1920; that he saw Nealy Stoner frequently, as they attended the same school.

The State rested, and defendant interposed a demurrer to the evidence, which was overruled.

Appellant testified in his own behalf, substantially as follows: That he was thirty-two years old, and had lived in Washington County all his life; that he was sworn and testified in the larceny case, and was acquitted by a jury; that he then testified about purchasing the nine chickens from Stoner and Cole; that the testimony which he gave at said trial was true; that he then swore he purchased said chickens from Stoner and Cole on April 27, 1920, and that this testimony was true; that he swore said boys were riding a black or dark bay horse, and this testimony was true; that he testified that said boys brought him the above chickens in sacks, and this was true; that he truthfully swore in said trial he paid these boys $6.75 for nine chickens; that he truthfully swore in the former case that he recognized Nealy Stoner as one of the boys who sold him the chickens; that he truthfully testified then, that he met Nealy Stoner at Belgrade, and this was the first time he knew who Nealy Stoner was; that on April 27, 1920, he was not acquainted with Nealy Stoner; that he never met the latter at a threshing machine three years before; that on April 27, 1920, he did not know Aquilla Cole; that he had never been associated with him, and did not know where he lived.

On cross-examination he testified that he helped Hull thresh, and was with the threshing machine several days; that Frank Hull's boy was driving the water wagon; that he had a chicken house; that he never bought chickens at night, aside from this deal.

George Mallow testified that about June 1, 1920, he knew defendant and met the latter, who asked him for the name of Nealy Stoner, whom they then saw at Belgrade, Missouri; that he did not talk with defendant at that time about the Stoner boy.

On cross-examination he testified that Nealy Stoner was not in sight when defendant asked the name of the

boy working for Fred Crummer; that he (witness) did not point out Nealy Stoner to defendant.

Frank Hull testified that he knew defendant, and had known him since boyhood; that defendant worked for him in running a threshing machine; that he never saw defendant and Nealy Stoner together.

Defendant offered in evidence the information heretofore set out, his judgment of acquittal, and the other papers in the larceny case, including instructions which were given in said cause. Defendant also offered in evidence, the indictment in this case, also the demurrer, former plea of jeopardy, etc.

Defendant rested, and the State, in rebuttal, offered as a witness Homer Stoner, who testified that in 1918 he and Nealy Stoner saw defendant at Hull's place, and Nealy Stoner then gave defendant a chew of tobacco; that defendant smoked cigarettes. Nealy Stoner corroborated his brother as to the chew of tobacco being given to defendant.

No demurrer to the evidence was interposed by defendant at the conclusion of the whole case.

The instructions and rulings of the court, as far as necessary, will be considered in the opinion.

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, and defendant was duly sentenced in accordance with the terms of said verdict. Judgment was entered in due form and an appeal granted him to this court.

I. In appellant's first assignment of errors, it is contended that Instruction Two, given in behalf of the State, is erroneous because it does not define "corroborating circumstances." In other words, it is not

Defining Corroboration. claimed that the instruction is wrong in any particular, but that it should have defined the above quoted terms. Said instruction, and the one given at the request of defendant on the same subject, are placed in juxtaposition, in order to show that defendant invited the court to give said instruction in its present form.

State v. Tedder.

Number Two.

·"The court further instructs the jury that you ought not, to convict the defendant unless you believe and find that the falsity of the statement upon which, by the indictment, under these instructions, the charge against him is based, has been to your satisfaction fully established, either by the testimony of more than one credible witness, or by that of one such witness corroborated by other evidence in this cause, which convinces your mind of the truth of the testimony of such single witness to the fact, and of the falsity of the statement; and not then, unless you further find from the evidence the existence of all the other elements of the offense and of the facts necessary to authorize his conviction, as such element and fact are hereinbefore fully set out.  In other words, before you can find the defendant guilty under the indictment, it devolves upon the State to prove to your satisfaction and beyond a reasonable doubt by the testimony of two credible wit-

Defendant's Instruction Given.

"The court instructs the jury that you ought not to convict the defendant unless you believe and find from the evidence that the falsity of the statement upon which, by the indictment, the charge against him is based, has been to your satisfaction fully established, either by the testimony of more than one credible witness, or by that of one such witness corroborated by other evidence in the case, which convinces your mind of the truth of the testimony of such single witness to the fact and to the falsity of the statement, and not then unless you further find from the evidence the existence of all the other elements of the offense, and of the facts necessary to authorize his conviction. In other words, before you can find the defendant guilty under the indictment, it devolves upon the State to prove to your satisfaction by the testimony of two credible witnesses, or one credible witness and corroborating circumstances proved by other credible

nesses or one credible witness and corroborating circumstances proven by other credible witnesses in this cause that the defendant, within three years next before the 23rd day of August, 1920, stole the said eight chickens from the said Eliza Parmley."

witnesses in the cause, beyond a reasonable doubt, that Milton Tedder within three years next before the first Monday in March, 1921, wilfully, maliciously and corruptly did commit perjury."

(a) The defendant having asked, and obtained, the above instruction dealing with the subject of "corroborating circumstances," couched in identically the same language as that contained in Instruction Two supra, is in no position to complain of the court's failure to define "corroborating circumstances." [Simpson v. Wells, 237 S. W. (Mo.) l. c. 528, and cases cited; Aronovitz v. Arky, 219 S. W. (Mo.) l. c. 622; Miller v. Harpster, 273 Mo. l. c. 614, 201 S. W. 854.]

(b) The trial court was not requested to give an instruction defining "corroborating circumstances," nor was said Instruction Two objected to on the ground that it failed to define said terms. The motion for a new trial does not assign as error the action of the court in failing to define "corroborating circumstances."

(c) Said Instruction Two properly declares the law in respect to the matter complained of by appellant. The State did not rely upon contradictory or inconsistent statements of defendant for conviction, but, on the contrary, relied on the positive testimony of the two witnesses, Nealy Stoner and Aquilla Cole, to the effect, that they never sold or delivered the chickens in controversy to defendant. The instructions heretofore set out, which were given in behalf of the State and appellant, were therefore sufficient, without undertaking to define "corroborating circumstances."

(d) Considered from any viewpoint, we are of the opinion, that the foregoing contention is without merit.

II.   Appellant in his second assignment of errors charges the court with error in overruling his plea of former jeopardy.   The larceny information is heretofore set out, and shows on its face that defendant Milton Tedder was charged with feloniously stealing in the nighttime, from the messuage of Eliza Parmley, being the premises upon which her dwelling was situated, on April —, 1920, eleven chickens, the property of said Parmley, etc.   Section 3314, Revised Statutes 1919, under which the above information was filed, reads as follows:

**Former Jeopardy.**

"Every person who shall take, steal and carry away any domestic fowl or fowls in the nighttime from the messuage of another, or from the premises upon which the dwelling house of another is situate, and any person purchasing such domestic fowl or fowls knowing them to have been stolen, shall be guilty of grand larceny, regardless of the value thereof,. and upon conviction, shall be punished by imprisonment in the penitentiary not exceeding five years or by fine not exceeding two hundred dollars, or by confinement in the county jail not exceeding two months, or by both such fine and imprisonment."

Defendant was acquitted of the larceny, and is now prosecuted under the indictment for having committed perjury during the progress of said trial, in swearing therein that on the night of April 27, 1920, he bought the chickens in controversy from Stoner and Cole, and did not steal the same.   The defendant, at the former trial, was attempting to account for his possession of recently stolen property, by showing that he bought and paid Stoner and Cole for same.   This evidence was material to his defense in the larceny case, and if he wilfully and intentionally swore falsely in respect to the alleged purchase of said chickens from Stoner and Cole, to secure an acquittal in the larceny case, he was guilty of the independent crime of perjury, as defined in Section 3126, Revised Statutes 1919, which reads as follows:

"Every person who shall wilfully and corruptly swear, testify or affirm falsely to any material matter, upon any oath or affirmation, or declaration, legally administered, in any cause, matter or proceeding, before any court, tribunal or public body or officer, and whoever shall falsely, by swearing or affirming, take any oath prescribed by the Constitution of this State, or any law or ordinance thereof, when such oath shall be legally administered, shall be deemed guilty of perjury."

On the facts presented by the record in this case, the charge of larceny and that of perjury relate to entirely different offenses. It is true that defendant was acquitted of grand larceny, but if he committed perjury, in swearing that he bought the Parmley chickens from Stoner and Cole on the night of April 27, 1920, he was liable to prosecution therefor, under the law, regardless of the larceny acquittal. [State v. Ruddy, 228 S. W. (Mo.) l. c. 762 and cases cited; State v. Jennings, 278 Mo. l. c. 552-3-4, 213 S. W. l. c. 423, and cases cited; State v. Hardiman, 277 Mo. l. c. 233, 209 S. W. l. c. 880; State v. Moran, 216 Mo. 550, 115 S. W. 1125; State v. Ackerman, 214 Mo. l. c. 332, 113 S. W. 1087; State v. Day, 100 Mo. l. c. 249; State v. Wakefield, 73 Mo. 549.]

In view of the foregoing, the plea of former jeopardy was properly overruled by the trial court.

III. It is contended by appellant that his demurrer to the indictment should have been sustained. Said demurrer, without caption and signature, reads as follows:

"The said Milton Tedder, in his own proper person, comes into court, and having seen and heard read the indictment herein, says that the said indictment and the facts therein contained and stated are not sufficient in law and do not constitute any offense under the laws of this State, and that he is not bound to answer the said indictment because he says:

Indictment.

"1. That the alleged material fact in the trial in which the alleged false testimony was given is not of necessity contradicted by the alleged false testimony.

"2.   That the alleged false testimony does not contradict or dispute the alleged material question.

"3.   There is a fatal variance between the alleged material question and the alleged false testimony.

"Wherefore he prays judgment and that by the court he may be dismissed and discharged from the premises in said indictment specified."

The indictment heretofore set out speaks for itself, and fully meets the requirements of Section 3132, Revised Statutes 1919. [State v. Ruddy, 228 S. W. (Mo.) l. c. 761; State v. Walker, 194 Mo. l. c. 375-6; State v. Nelson, 146 Mo. 256; State v. Powers, 136 Mo. 194; State v. Huckeby, 87 Mo. 414; State v. Cave, 81 Mo. 450.] It contains all the requirements of the statute, and is sufficient as to both form and substance. The demurrer thereto was properly overruled.

IV.   The defendant asked but one instruction, which was given by the court. He did not request the court to give any *additional* instructions, or to *modify* those that were given. We are of the opinion that the instructions given were as favorable to defendant as the law authorized. No error was committed against him in the admission or rejection of testimony. The case, when reduced to its final analysis, simply presented for the consideration of the jury the question as to whether defendant committed *perjury* in the trial of the *larceny* case, in *swearing* that he bought the Parmley chickens from Stoner and Cole, on the night of April 27, 1920. Neither Stoner nor Cole was present at the trial of the larceny case, nor did either testify therein. Both Stoner and Cole testified in the present case, *that they did not sell or deliver the chickens in controversy to defendant on April 27, 1920, or at any other time.* A sharp issue of *fact* was thus presented, and the jury found against defendant on substantial testimony. We are of the opinion that no error was committed in the trial of the case, of which the defendant can legally complain.

<span style="float:left">Guilt Established.</span>

The judgment below is accordingly affirmed. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.